## SPEELMAN v. IOWA STATE TRAVELING MEN'S ASS'N.

(Circuit Court of Appeals, Eighth Circuit. March 10, 1925.)

No. 6643.

1. **Appeal and error ☞997(3)—Trial ☞177—Motion by both parties for instructed verdict amounts to request that court find facts.**

Motion by both parties for instructed verdict amounts to request that court find facts, and limits reviewing court to sole question whether facts found are supported by evidence.

2. **Insurance ☞665(5)—Evidence held to sustain finding insured did not die as result of train wreck, within meaning of insurance policy.**

Evidence that Pullman passenger may have died from effects of smoke and gas in burning car *held* to sustain finding that he did not die as result of train wreck, within meaning of insurance policy.

3. **Insurance ☞124—Insurance companies may by contract limit their liability as they please.**

Insurance companies may by contract limit their liability as they please.

4. **Insurance ☞598—Beneficiary under insurance policy held entitled to interest to date of judgment.**

Beneficiary under insurance policy, after adverse determination of question of double liability, *held* entitled to interest on face of policy from time it became payable to date of judgment.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Action by Anna Lane Speelman against the Iowa State Traveling Men's Association. Judgment for plaintiff for less than amount claimed, and she brings error. Affirmed, with modification.

Eugene Silverman, of St. Joseph, Mo. (Clinton L. Nourse, of Des Moines, Iowa, and Charles F. Strop and Charles H. Mayer, both of St. Joseph, Mo., on the brief), for plaintiff in error.

Clifford V. Cox, of Des Moines, Iowa (Norton Sullivan, John B. Sullivan, A. G. Rippey, Donald Evans, and William F. Ri-

ley, all of Des Moines, Iowa, on the brief), for defendant in error.

Before KENYON, Circuit Judge, and TRIEBER and PHILLIPS, District Judges.

KENYON, Circuit Judge. This is a writ of error from the District Court of the United States for the Southern District of Iowa. Plaintiff in error is the widow of Francis S. Speelman, deceased. The suit was brought to recover of defendant in error an amount alleged to be due upon an insurance contract. Mr. Speelman was a member in good standing at the time of death in defendant in error association, and held a certificate of membership therein. Section 2 of article 6 of the by-laws of the association provided for certain insurance for its members, and is as follows:

"Whenever a member in good standing shall, through external, violent and accidental means, receive bodily injuries which shall, independently of all other causes, result in death within 90 days from the date of the receipt of said injuries, the beneficiary named in his application for membership, or his heirs, if no beneficiary is named therein, shall be paid the sum of $5,000: Provided, however, that indemnity to be paid under this section, in case the death of the member shall have resulted from injuries to said member as the result of a train wreck while he is riding as a passenger inside a coach or passenger car on an exclusively passenger train propelled by steam, or on such train while the same is propelled by electricity at the terminals of such steam railroad $10,000, which shall be in full satisfaction of all liability to the said deceased member, his beneficiary, heirs or legal representatives, and shall be in lieu of the weekly indemnity due said member, but there shall be deducted from the said $5,000 or $10,000, as the case may be, all weekly indemnity paid such deceased member within 90 days immediately prior to the death of said member."

Under this provision, in case the death of Mr. Speelman was brought about by injuries suffered as the result of a train wreck while riding as a passenger in a coach of an exclusively passenger train propelled by steam, the beneficiary was entitled to recover double indemnity of $10,000, otherwise, the amount of indemnity was $5,000. There was little dispute in the evidence as to the circumstances surrounding his death. At the conclusion of all the evidence plaintiff in error moved for an instructed verdict of $10,-

000, and defendant in error moved the court to direct the jury to return a verdict for $5,000 for the plaintiff in error. The court sustained the motion of defendant in error and instructed a verdict of $5,000 for plaintiff in error.

Two specifications of error are set forth in the brief, viz. that the court erred (a) in refusing to give the instruction prayed by plaintiff in error instructing the jury to return a verdict for $10,000, with interest; and (b) that the court erred in giving to the jury the peremptory instruction prayed by defendant in error to instruct the jury to return a verdict for plaintiff in error for $5,-000. Both of these specifications of error really present one question, to wit: Should plaintiff in error's motion have been sustained, and defendant in error's motion denied?

The circumstances surrounding the death of plaintiff in error's husband were these: He was a passenger, occupying a berth in the Pullman car Carona on the Denver & Rio Grande passenger train en route from Pueblo, Colo., to Alamosa, Colo., on March 15, 1921, boarding the train at Pueblo, Colo., shortly before midnight on March 14, 1921, to ride to Alamosa, Colo. This train left Pueblo at 12:01 a. m. March 15, 1921, stopping at Mustang, Colo., at about 1:08 a. m. About 20 minutes after leaving Mustang, the Pullman car Carona, the last car of the train, was discovered to be on fire. The train was brought by the engineer to a stop before any signal was given him so to do. Of the seven persons asleep in the car, only two, the porter and a passenger, escaped. The other passengers, including Mr. Speelman, were cremated. This Pullman car and the one in front of it were so completely burned that they were detached from the train and left at the scene of the fire; the train then proceeding on its way. The cause of the fire is unknown and a matter of speculation.

It is urged by plaintiff in error (a) that the destruction by fire of the Pullman car in which Mr. Speelman was riding was a train wreck, within the meaning of the by-laws and certificate constituting the so-called insurance policy; (b) that the double indemnity clause was applicable, because the deceased husband of plaintiff in error met his death in the alleged wreck, or while the forces producing the wreck were operating. Whether the destruction of the Pullman sleeper by fire was a train wreck, under the terms of the agreement, is a question difficult of determination, and upon which the court is not in entire agreement. Counsel on both sides state in the briefs that they have not been able to find, after exhaustive search, a judicial authority construing the words "train wreck." As we think the proper determination of the case is not dependent upon the construction of the term "train wreck," as used in the contract, we shall not attempt a definition thereof, content to let it rest until necessity for judicial construction of the term may arise.

[1] Both parties, at the close of all the testimony, moving for an instructed verdict, places the case in a well-settled status. In Meyer & Chapman State Bank v. First Nat. Bank of Cody, 291 F. 42, 45, we said: "It is the general holding of the federal courts that, where both parties to an action, at the conclusion of the testimony, ask for an instructed verdict, and do nothing more, it is a request to the court to find the facts, and the appellate court is 'limited, in reviewing its action, to the consideration of the correctness of the finding on the law, and must affirm if there be any evidence in support thereof.' * * * Under such circumstances, the only questions open to the appellate court are: (a) Was there substantial evidence to support the findings? and (b) was there error in the application of the law?" Orr et al. v. Waldorf-Astoria Hotel Co. (C. C. A.) 291 F. 343; Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038; Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654; Union Electric Steel Co. v. Imperial Bank (C. C. A.) 286 F. 857.

In view of these motions the court was in the position of being requested to find the facts. The court did not make specific findings of facts. Of course, a general finding inheres in the judgment rendered. The views of the court are, however, interesting, a portion of which were as follows: "As I understand it, this fire occurred; the train was stopped, and this man was either burned to death or was asphyxiated. That cause, or whatever it was that caused his death, was not the result of a wreck, as far as I can see. It might have produced a wreck, but there is no evidence to show that it was the result of a wreck. I do not know, strictly speaking, that the death resulted from anything that happened from what is claimed to have been a wreck. He might have been dead when that car was stopped, as far as this evidence goes; it is for that reason that we do not have to stop to determine whether that was a wreck or not. The question is, whether or not the injuries were the result of a wreck." Record, p. 105.

The court was apparently of the opinion from the evidence that Mr. Speelman was either burned to death or was asphyxiated, and that his death was not the result of the alleged wreck. If there be evidence to support the finding of the court as embodied in the judgment as to facts, it is not subject to review. There is ample evidence in this record to sustain a finding that Mr. Speelman was asphyxiated by the gas, or overcome by a combination of gas and smoke, before the fire had commenced to burn inside of the sleeper; the smoke apparently coming from without, while the gas seems to have ignited as it escaped from the car.

The brakeman, Mr. Scale, testifies that he was riding in the smoking room of the Pullman that was burned and smelled smoke or gas; saw smoke oozing through the curtain; went out and found the passage choked with smoke and gas. He tried to arouse the sleeping passengers, but testifies he would only be in the Pullman a minute or so when he would be overcome with smoke and gas; would choke when he would open his mouth "to holler"; stumbled over some person in the aisle, who was unconscious; that he saw the Pullman porter going by him getting out, and he seemed choked with smoke; testifies that it was gas as well as smoke in the car; that it would not have been possible to have remained in the car very long and survive; that stifling and choking sensations were produced by the gas. We set out the following from his testimony:

"A. I do not remember fumes such as you mention of varnish burning; I assumed it to be gas. I couldn't swear to it; it had stifling and choking sensations.

"Q. Would it have been possible for you to have remained in the car very long and survived? A. No; I wouldn't have been able to stand it very long.

"Q. If you had remained longer, would you have been overcome? A. "Yes." Record, p. 33.

The witness White, who was general car foreman of the first division, with headquarters at Pueblo, testified that, in his judgment, the burning of the Pullman was contributed to by the Baker heater, and, when asked in what way, replied: "Forming gases, by the porter having closed the bottom door and leaving the upper door open."

The Pullman porter, Joseph Thompkins, testified that he dropped off to sleep, and the next thing he knew he felt strangled, and he dozed and strangled until he got down from the upper berth, where he was asleep, to the floor; that anybody going out should, to be safe, have gone long before he got out; that he heard no sound or screaming or calling for help from any occupants of the berths.

[2] Other evidence might be cited, but this would be sufficient to sustain the finding of the court that Mr. Speelman's death was not the result of a train wreck. Throwing light on how court and counsel regarded it is the interesting colloquy (Record, p. 106), as follows:

"The Court: This policy, as it now appears to me, was intended to change that. It was intended to limit liability to injuries received in a wreck, or as the result of a wreck. It was intended to scale down this double indemnity while on a train. It was intended to make this general limitation, to limit the right to double indemnity.

"Mr. Mayer: Your honor, it seems to me that, if this is to be taken as your honor takes it, 'as the result of a wreck,' then this plaintiff ought to be able to recover for that very reason. If this man had been in the smoking room, and had dropped a match, and had burned himself up, it may be that he could not recover; but this fire did not come from this man himself. This man, from all the evidence, died from a wreck, just as much as though a rock had come rolling down one of those hills and had jambed a heavy timber against him; produced some violent force that went against him. As it was this smoke and gas was just as deadly to him as though a heavy rock had come rolling against the car. This man, the testimony shows, was sleeping in lower 4, towards the rear of the car; he was not hurt by some accident; not a fall. If he had dropped a match and burned himself up, I would say that he could not recover, but here was an accident as a result of a wreck.

"The Court: Suppose they had turned on the fire, and this man had absorbed enough of the gas to kill him; would there be double indemnity?

"Mr. Mayer: No, sir."

[3] This policy differs from policies which provide for additional indemnity in case of injury or death occurring while a person is a passenger on a train. The language here as to the additional liability is different. The term "shall have resulted from injuries to said member as the result of a train wreck" must be considered. The proviso was intended to and did, enlarge the liability of defendant in error association, but did not enlarge it to cover death to a passenger, un-

less the element of injury "as the result of a train wreck" was involved. The defendant in error had a right to contract as to just what it would be liable for. There is no reason for any strained or unnatural construction of the contract. It should be construed the same as any other contract.

In Hawkeye Commercial Men's Ass'n v. Christy, 294 F. 208, 213, this court said: "The parties to insurance contracts have the right and power to contract for what accidents and risks the companies shall and for what accidents and risks they shall not be liable and the courts may not make new or different contracts for them. The function and duty of the courts consist simply in enforcing and carrying out the contract actually made by the parties."

Granting that the destruction of this Pullman car was sufficient to constitute a wreck under the terms of the policy (which we do not decide), the burden was on the plaintiff in error to show that, under the terms of the insurance contract, death resulted from the injuries to Mr. Speelman as the result of such alleged "train wreck." The court found this was not the situation, and, as we have pointed out, there was evidence to sustain its finding. Based on that finding there was no error in the application of the law resulting in a judgment of $5,000, instead of $10,000.

[4] A question is raised in argument as to interest on the $5,000 from the time it should have been paid, to wit, 90 days after death to the time of judgment. In May, 1921, defendant in error sent to attorneys for plaintiff in error a check for $5,000 in full payment of the amount due on the policy, which was returned May 25, 1921. At the commencement of the trial counsel for defendant in error offered to confess judgment for $5,000, with interest and costs, but the same was not paid into court. The tender was not kept good. The court instructed verdict for $5,000, without including such interest. If the attention of the court had been called to this matter, undoubtedly the interest would have been added. It may be doubtful if this question is properly here, but there were exceptions taken to the instruction of the court to the jury to return a verdict for plaintiff in error for $5,000, and the failure to allow interest is set forth in one of the assignments of error, and probably inheres in the specifications of error.

The $5,000 was due 90 days from the date of Speelman's death, or June 15, 1921, and plaintiff in error was entitled to interest thereon at 6 per cent. up to the date of entry of judgment on May 23, 1923. Entry of judgment without including the interest was error. We think, however, it can be cured by affirming the judgment, with a modification that the same shall be increased by adding thereto the interest on the $5,000 from June 15, 1921, to May 23, 1923, the date when judgment was entered, and, while affirming the judgment, we remand the case to the District Court for such correction.

Affirmed, with modification.