# WILLIAMS, AS RECEIVER OF THE FIRST NATIONAL BANK OF BAYONNE, NEW JERSEY, *v.* VREELAND.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 318. Submitted April 23, 1919.—Decided June 2, 1919.

Where both parties without more request a peremptory instruction, they thereby assume the facts to be undisputed and, in effect, submit to the trial judge the determination of the inferences proper to be drawn from them; and his finding must stand upon review, if supported by proper evidence. P. 298.

A husband, without his wife's knowledge or consent, caused shares of a national bank to be issued and entered on its books in her name, and afterwards, telling her that it was a mistake, induced her to indorse them for transfer, in blank, to correct the supposed error, and with no intention to ratify, affirm or acquiesce in his unauthorized act. *Held,* that the facts could be shown, and that the wife was not liable to assessment although the shares remained in her name on the books when the bank failed. *Id.*

Approval, ratification and acquiescence all presuppose the existence of some actual knowledge of the prior action and what amounts to a purpose to abide by it. P. 299.

244 Fed. Rep. 346, affirmed.

THE case is stated in the opinion.

Mr. *Stuart G. Gibboney* for plaintiff in error.

Mr. *Pierre P. Garven* for defendant in error.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Williams, as receiver, sued defendant in error in the United States District Court for New Jersey to enforce

an assessment against her levied by the Comptroller of
the Currency (§ 5151, Rev. Stats.) because she apparently
owned certain stock of the First National Bank when it
failed, December 6, 1913. She admits that the certificates
were made out in her name and. at time of the failure
were so entered on the bank books. But she claims that,
without her knowledge or consent, her husband caused
them to be thus issued and entered. And further, that
although she signed blank powers of attorney endorsed
thereon and thereby made it possible to transfer the
stock from her name, she never really approved, ratified
or acquiesced in the transfer to herself.

Each side asked for an instructed verdict without
more; the trial judge directed one in favor of Mrs. Vree-
land, and in support of this action said—"Although the
burden was upon the defendant to show that she was
not in fact the owner of the stock, (*Finn* v. *Brown*, 142
U. S. 56, 67), I think that she has borne the burden by
proving that the placing of the stock in her name in the
first instance was unauthorized—without her knowledge
and consent—and. that she did not thereafter acquiesce in
this act or in any way ratify it. . . . I am constrained
to hold, therefore, that the defendant is not liable and
that a verdict should be directed in her favor." Final
judgment entered upon the consequent verdict was ap-
proved by the Circuit Court of Appeals. 244 Fed. Rep.
346.

In respect of the evidence and its conclusions there-
from the latter court said:

"The plaintiff proved that the defendant was a share-
holder of record and that she did nothing to remove her
name as such. This was sufficient to establish prima
facie the defendant's liability. *Finn* v. *Brown*, 142 U. S.
56, 57; *Matteson* v. *Dent*, 176 U. S. 521, 530. The burden
then shifted to her (*Finn* v. *Brown*, *supra*) to show that
the act of making her a shareholder was in the first in-

stance unauthorized; that it was without her knowledge or consent; and that she has not since acquiesced in or ratified it. That she has sustained the burden upon the first two points is not disputed; therefore the remaining question is as to evidence of her ratification. . . . Considering this testimony in connection with corroborating testimony, it appears to us, that what Mary A. Vreeland did, in legal effect, was to make a valid execution of a power of attorney for the transfer of stock. That act, in so far as it authorized a transfer of stock, she cannot avoid by pleading ignorance. As the question here does not involve the validity of the act to effect a transfer, but concerns its evidential imputation of the knowledge with which it was done, we are of opinion that the circumstances which attended the act were a part of it and affected the evidential inferences to be drawn from it. These circumstances show, that before acting, the defendant requested to be informed as to what she was asked to do; this information was denied her. It was denied her under representations and influences, which, when she acted, led her to believe she was doing something entirely different from that which she was actually doing; that is, she was made to believe she was correcting a mistake of her husband, a mistake affecting his affairs, not that she was dealing with or assigning away her own property. Therefore, we think the circumstances were such as to negative the knowledge, which otherwise it is presumed her act would have imparted. They contradicted the normal imputations of her act, and left her without that knowledge which was a prerequisite to a valid ratification of her husband's unauthorized act."

It further held—

"Instead of submitting the case to the jury, however, each party asked the court for binding instructions in his favor, which, under *Beuttell* v. *Magone*, 157 U. S. 154, is not a submission to the court without the intervention

of a jury, within the intent of Rev. Stat., §§ 649, 700, but is equivalent to a joint request for a finding of fact by the court, and when the court, acting upon such request, directs the jury to find for one of the parties, both are concluded on its finding. In this case the parties submitted to the court the question of the wife's ratification of her husband's unauthorized act; that question was one of fact; upon it depended her liability. The court's decision, as evidenced by its instruction to the jury that they render a verdict for the defendant, was a finding of fact, which concluded both parties as effectually as if the same fact had been found by the jury."

The established rule is, "Where both parties request a peremptory instruction and do nothing more they thereby assume the facts to be undisputed and, in effect, submit to the trial judge the determination of the inferences proper to be drawn therefrom." And upon review, a finding of fact by the trial court under such circumstances must stand if the record discloses substantial evidence to support it. *Anderson* v. *Messenger*, 158 Fed. Rep. 250, 253; *Beuttell* v. *Magone, supra,* 157; *Empire State Cattle Co.* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 210 U. S. 1, 8; *Sena* v. *American Turquoise Co.*, 220 U. S. 497, 501; *American National Bank* v. *Miller*, 229 U. S. 517, 520; *Mead* v. *Chesbrough Bldg. Co.*, 151 Fed. Rep. 998, 1002; *American National Bank* v. *Miller*, 185 Fed. Rep. 338, 341.

Counsel for the receiver maintained that, when Mrs. Vreeland endorsed the certificates in blank at the request of her husband who declared this necessary to enable him to correct his mistake, she thereby indisputably ratified his unauthorized transfer of the stock to her and assumed the duty promptly to remove her name from the bank books or suffer the liability imposed upon duly registered shareholders. But we think the courts below rightly held that facts and circumstances concerning this endorsement could be shown in order to negative the inference which

would have followed if unexplained. *Glenn* v. *Garth,* 133 N. Y. 18, 36, 37. And as without doubt there is substantial evidence tending to show she had no actual intention to ratify, affirm or acquiesce in her husband's unauthorized act, we must accept that as finally established.

In *Keyser* v. *Hitz,* 133 U. S. 138, which involved the liability of a married woman for an assessment levied against national bank stockholders, speaking through Mr. Justice Harlan, this court approved a charge—"If the stock in controversy was transferred upon the books of the German-American Savings Bank to and in the name of the defendant without her knowledge and consent, she was entitled to a verdict, unless she subsequently ratified and confirmed such transfer." And it was further said—"We must not be understood as saying that the *mere* transfer of the stocks on the books of the bank, to the name of the defendant, imposed upon her the individual liability attached by law to the position of shareholder in a national banking association. If the transfers were, in fact, without her knowledge and consent, and she was not informed of what was so done—nothing more appearing— she would not be held to have assumed or incurred liability for the debts, contracts and engagements of the bank. But if, after the transfers, she joined in the application to convert the savings bank into a national bank, or in any other mode approved, ratified or acquiesced in such transfers, or accepted any of the benefits arising from the ownership of the stock thus put in her name on the books of the bank, she was liable to be treated as a shareholder, with such responsibility as the law imposes upon the shareholders of national banks."

Approval, ratification and acquiescence all presuppose the existence of some actual knowledge of the prior action and what amounts to a purpose to abide by it. *Owings* v. *Hull,* 9 Pet. 607, 629; *Western National Bank* v. *Armstrong,* 152 U. S. 346, 352; *Glenn* v. *Garth, supra.* When

defendant in error signed blank powers of attorney she did not know what her husband had done and certainly entertained no purpose to approve transfer of the certificates to herself.  She thought she was merely doing something to enable him to correct his avowed mistake and nothing else.  Nobody was misled or put in a worse position as the result of her act.  "As between the original parties that could not be deemed a ratification which was accompanied by a refusal to ratify, and a declared purpose to undo the unauthorized act.  The form adopted, by itself and unexplained, would tend to an inference of ratification, but it is not left unexplained.  The actual truth is established, and that truth must prevail over the form adopted as between parties who have not been misled, to their harm, by the form of the transaction as distinguished from its substance."  "The presumption which might have flowed from the form of the transaction disappears upon the explanation made, and in view of the substantial truth proved by the evidence."  *Glenn* v. *Garth, supra,* 36, 37.

The record reveals no material error and the judgment below is

*Affirmed.*