## UNITED STATES v. RUSSELL WHEEL & FOUNDRY CO.

(District Court, E. D. Michigan. February 16, 1926.)

**1. Trial ⬳177—Request by each party, at close of testimony, that court direct verdict, is necessarily request that court find facts.**

Request by both parties, at close of testimony, that court direct verdict, amounts to agreement that there was no disputed question of fact, and is necessarily request that court find the facts.

**2. United States ⬳135—United States can recover in its name for overpayment on contract made by Emergency Fleet Corporation.**

United States can in its own name maintain action to recover overpayment on contract, for propeller wheels made by United States Shipping Board Emergency Fleet Corporation for the United States, its disclosed principal.

**3. Trial ⬳141—There is no question for jury as to reasonableness of time within which propellers were inspected and rejected, when undisputed evidence shows that seller acquiesced in rejection.**

Where undisputed evidence shows that defendant had repeatedly, both verbally and by correspondence, acquiesced in rejection of propellers by United States Emergency Fleet Corporation, there is no question for consideration of jury as to reasonableness of time within which propellers were inspected and rejected.

At Law. Action by the United States against the Russell Wheel & Foundry Company. Verdict directed for plaintiff.

Delos G. Smith, of Detroit, Mich., U. S. Atty.

Raymond K. Dykema, of Detroit, Mich., for defendant.

RAYMOND, District Judge. On July 10, 1918, the United States Shipping Board Emergency Fleet Corporation, by the American International Ship Building Corporation, its agent, placed a written order with the defendant for the manufacture and delivery at Hog Island, Pa., of 120 propellor wheels. The propellers were to be manufactured in accordance with drawings and specifications. The first shipment was made on September 19, 1918, and by November 5, 1918, 22 of the propellers had been received at Hog Island Ship Yard. No inspection was made until November 20, 1918, at which time a serious error was discovered in the dimensions of the propellers. Upon complaint being made to defendant, it admitted responsibility for the error, and in correspondence stated that it had no desire to evade this responsibility, and that it would proceed on the basis that it was to furnish 120 propellers in accordance with the terms of the order. Defendant was notified, verbally and in writing, that these propellers were rejected. Defendant unconditionally acquiesced in this rejection, and promised to replace the propellers which had been shipped.

During the time the 22 propellers were being manufactured, and up to the time of discovery of the error referred to defendant was paid the sum of $37,000.49, and later, through inadvertence, was paid the full contract price for the 120 propellers which were

thereafter shipped in compliance with the contract. About November 25, 1919, this error in overpayment was discovered, and demand made upon defendant for repayment, which was refused by defendant upon the ground that unreasonable delay had occurred in inspection of the 22 propellers. About March 1, 1921, the 22 propellers, for the storage of which defendant arranged, were sold as scrap iron; the amount received therefor being $2,777.99. This action was brought to recover the amount of the overpayment, and came on for trial before a jury.

[1] At the close of the testimony each party asked the court to direct a verdict in its favor. This amounts to an agreement that there is no disputed question of fact which could operate to deflect or control the questions of law involved, and is necessarily a request that the court find the facts. Beuttell v. Magone, 15 S. Ct. 566, 157 U. S. 154, 39 L. Ed. 654; Williams v. Vreeland, 39 S. Ct. 438, 250 U. S. 295, 63 L. Ed. 989, 3 A. L. R. 1038.

Defendant's motion is principally upon the ground that this action should have been instituted in the name of the United States Shipping Board Emergency Fleet Corporation (hereafter referred to as the Fleet Corporation), instead of in the name of the United States; that the Fleet Corporation was a separate entity, and the sole party to the contract; and that in its relations with the defendant it was a sole contractor, and not an agent of the United States. Defendant relies upon the following authorities: The Lake Monroe, 39 S. Ct. 460, 250 U. S. 246, 63 L. Ed. 962; United States v. Strang, 41 S. Ct. 165, 254 U. S. 491, 65 L. Ed. 368; Sloan Shipyards Corp. v. U. S. Shipping Board Emergency Fleet Corporation, 42 S. Ct. 386, 258 U. S. 549, 66 L. Ed. 762; Providence Engineering Corporation v. Downey Shipbuilding Corporation (C. C. A.) 294 F. 641; United States v. Matthews (C. C. A.) 282 F. 266.

A careful examination of these cases is convincing that (with the possible exception of the Matthews Case) they are not applicable. The precise question presented for decision is whether the United States can recover in its name for an overpayment of money made to defendant during the performance of a contract entered into with defendant for its use and benefit in the name of the Fleet Corporation. The cases cited do not settle that question adversely to plaintiff. In none of those cases is it held that the Fleet Corporation was not the agent of the United States. On the contrary, in all of the cases cited, the fact of agency is distinctly recognized. The cases cited are clearly within well-recognized principles of law relating to agency.

The extent of the holding in The Lake Monroe Case was that, under the express provisions of section 9 of the Shipping Board Act (Comp. St. § 8146e), the vessel was subject to judicial process in admiralty for damages arising from a collision.

In the Sloan Shipyards Case the bill alleged that the Fleet Corporation unlawfully took possession of all of plaintiff's property, and prayed for an accounting together with restoration of the property seized. Both the Lake Monroe and the Sloan Shipyards Cases arose, not out of contract, but from alleged torts. The liability of an agent for his torts rests upon different legal principles than do the rights of a principal, either disclosed or undisclosed, to bring suit in its name upon claims resulting from contracts entered into by its agents for its benefit. Both of these cases recognized the intent of Congress that the Fleet Corporation should act as the agent of the government, but held that the Fleet Corporation did not, for that reason, cease to be answerable for its acts.

In The Lake Monroe Case, on page 254 (39 S. Ct. 463), it is said:

"The emergency shipping legislation evidently was enacted in the expectation that the President would employ the Shipping Board and the Fleet Corporation as his agencies to exercise the new powers, for the Fleet Corporation was mentioned in the act, and it was known to be but an arm of the board."

In the Sloan Shipyards Case, at page 567 (42 S. Ct. 388), it is said:

"Supposing the powers of the Fleet Corporation to have been given to a single man, we doubt if any one would contend that the acts of Congress and the delegations of authority from the President left him any less liable than other grantees of the power of eminent domain to be called upon to defend himself in court. An instrumentality of government he might be, and for the greatest ends; but the agent, because he is agent, does not cease to be answerable for his acts."

"The plaintiffs are not suing the United States, but the Fleet Corporation, and if its act was unlawful, even if they might have sued the United States, they are not cut off from a remedy against the agent that did the wrongful act. In general, the United States cannot be sued for a tort, but its immunity does not extend to those that acted in its name."

The case of United States v. Strang, 41 S. Ct. 165, 254 U. S. 491, 65 L. Ed. 368, arose under section 41 of the Criminal Code (Comp. St. § 10205), and it was held that an employee of the Emergency Fleet Corporation was not an agent of the United States within the meaning of that section.

The case of Providence Engineering Corporation v. Downey Shipbuilding Corporation held that the United States was not an indispensable party to a suit brought to foreclose a mortgage, wherein the priority of mortgages of the Fleet Corporation was involved.

As previously stated, none of the cases cited holds that the Fleet Corporation was not an agent of the government, nor do any of them tend to sustain the proposition that a principal may not sue in his own name upon a contract of his agent. That the United States can sue in its own name on contracts made by any duly authorized officer or agent acting in its name or for it and in its behalf has never been questioned. See Dugan v. United States, 16 U. S. (3 Wheat.) 172, 4 L. Ed. 362.

Cases holding that the Fleet Corporation is a separate and distinct entity, and that it may be liable for its torts, or that it may be liable upon its contracts, are not authority for the proposition that the United States may not appear as party plaintiff in a suit growing out of a contract which was made for its benefit and by its agent, whether that agent is a corporation or an individual. This is especially true where, as in this case, under the evidence, there can be no escape from the conclusion that defendant was fully aware that the Fleet Corporation was contracting on behalf of the United States government.

The only case which might be construed otherwise is that of United States v. Matthews (C. C. A.) 282 F. 266. If that case is to be construed as meaning that, because the Emergency Fleet Corporation is a mere agent for carrying out the powers delegated to it by Congress, the United States may not maintain an action to recover money paid through it by mistake, this court cannot accept this conclusion.

The case of United States v. Skinner & Eddy Corporation (D. C.) 5 F. (2d) 708, expressly holds that the United States may sue upon a contract made on behalf of the United States by the Emergency Fleet Corporation, the United States being the real party at interest.

[2] It is the conclusion of the court in this case that the United States Shipping Board Emergency Fleet Corporation was in this matter acting as agent for the United States, a disclosed principal, and that the United States may therefore maintain this action. For that reason, the motion of the defendant will be denied.

[3] There is in this case no question for the consideration of the jury as to the reasonableness of the time within which the propellers in question were inspected and rejected. It is clear from the undisputed evidence that defendant repeatedly and definitely, both verbally and by correspondence, acquiesced in the rejection, and thereafter agreed to and did furnish propellers in compliance with the terms of the order and accepted full payment therefor.

The jury will therefore be instructed to return a verdict in the sum of $45,116.92, being the amount of the overpayment, with accrued interest.