SMITH, State Superintendent of Banks, Appellant, v. SOGN, Respondent.

(226 N. W. 729.)

(File No. 6604. Opinion filed September 20, 1929.)

*Perry F. Loucks,* of Watertown, *Roy E. Willy,* of Sioux Falls, and *T. B. Thorson,* of Pierre, for Appellant.

*R. A. Dunham,* of Clark, for Respondent.

MISER, C. This is an action under section 8937, Rev. Code 1919, to enforce an alleged stockholder's liability under section

8993, Rev. Code 1919. The sole question is whether respondent was liable as a stockholder of the bank of which appellant later took charge as superintendent of banks. The trial court, which had the advantage of seeing and hearing the witnesses, found that respondent never was a stockholder. In the light of this finding, the facts may be stated thus: On June 19, 1922, one Graslie, formerly cashier of the bank, sold his interest in the bank to A. M. Sogn, its president, and transferred to him, by written assignment on the back thereof, a certificate for 20 shares of its stock. About a month prior thereto, respondent, the wife of A. M. Sogn, had received from her father a gift of $2,000. There had been some conversation between the Sogns about her using it to buy stock in the bank; but thereafter she deposited it in the bank, having decided not to purchase stock. She received a certificate of deposit.

Several weeks after Sogn bought the Graslie stock, which he valued at $200 per share, Sogn, as president of the bank and without consulting Mrs. Sogn, caused a certificate for 10 shares of the Graslie 20 shares to be issued to respondent as of June 30th. He signed the certificate as president, and signed the receipt in the certificate book thus: "Mrs. A. M. Sogn, by A. M. Sogn." He took home to his wife the certificate of deposit and the certificate of stock. Sogn testified: "I wrote out a certificate to Mrs. Sogn for the shares of this stock, and when I went home to lunch I took the certificate along with me down to the house, and also her time certificate of $2,000, and I told her I had written out a certificate to her for 10 shares of stock. She was sitting in the sewing room in front of the sewing table, and she said, 'I don't want the stock'; and I laid it down on the table in front of her, and we were talking a few words; she did not take it, and I took it, and laid it on the shelf a couple of feet above her head, in front of her." He further testified that it stayed there for two or three days, when he took it back to the bank. It lay on his desk for a time, and finally he put it in their safe deposit box. It remained there until February 3, 1923, when, as president of the bank and acting as its transfer agent, he canceled the certificate, issued to himself a new certificate for the 10 shares, and made a record thereof in the stock book. The bank closed on July 20, 1923.

Respondent testified as to the occasion when Sogn tendered the stock certificate issued to her without her knowledge or consent

as follows: "He showed it [the stock certificate] to me, but I did not accept it. He also brought home my certificate of deposit, and I told him to take it back to the bank because I had decided to use the money. I told him I was not going to take the bank stock." Thereafter she never exercised any control over the stock certificate, did not assign it, nor have any knowledge of its subsequent cancellation. She did not vote the stock, and gave no proxy to vote it, and had no knowledge that it stood in her name on the stock book, nor that her husband had, in at least one report to the superintendent of banks, reported her as a stockholder.

From the evidence as a whole, in the light of the court's finding, it may fairly be said that respondent was not liable as a stockholder of the bank, unless she was estopped by section 8961, Rev. Code 1919. This section is as follows:

"Every bank shall keep a stock book, which shall at all times during the regular hours of business be subject to the inspection of the stockholders and creditors of the bank. Such book shall show a full and correct list of the names and addresses of all stockholders in the bank and the number of shares held by each. A list of the owners of private banks shall be kept in like manner. Any officer of a bank who shall refuse to deliver such book to any person rightfully demanding an inspection thereof shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not exceeding fifty dollars. *In all actions, suits and proceedings such book shall be conclusive evidence of the facts therein stated.* A copy of such list as of the thirtieth day of June in each even-numbered year, verified by the oath of the president or cashier or owner of such bank, shall be transmitted to the superintendent of banks within ten days."

The problem presented by this appeal has never before been decided by this court, and we have been unable to find the decision of any court governed by a statutory provision similar to the part above italicized deciding a like question of liability to a state bank. Section 5151, Rev. St. U. S. (12 USCA § 63), stating the liability of stockholders of national banks, has been frequently construed. In Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 589, 45 L. Ed. 822, Mr. Justice Harlan said:

"The present suit is primarily in the interest of creditors of the bank. It is based upon a statute designed not only for their

protection, but to give confidence to all dealing with national banks in respect of their contracts, debts, and engagements, as well as to stockholders generally. If the subscriber became a shareholder in consequence of frauds practiced upon him by others, whether they be officers of the bank or officers of the government, he must look to them for such redress as the law authorizes, and is estopped, as against creditors, to deny that he is a shareholder, within the meaning of section 5151, if, at the time the rights of creditors accrued, he occupied and was accorded the rights appertaining to that position."

For other cases so holding, see Williams v. Stone (C. C. A.) 25 F. (2d) 831. The Supreme Court of this state in Farmers' State Bank v. Empey, 35 S. D. 107, 150 N. W. 936, 938, stated the liability of the stockholder in a state bank in almost identical language.

But that the mere transfer of stock in a national bank from husband to wife, without the latter's knowledge and consent, does not impose upon her the individual liability attached by law to the position of a shareholder, was also held by the United States Supreme Court in Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 439, 63 L. Ed. 989, 3 A. L. R. 1038. Therein the court quoted the language of Mr. Justice Harlan in Keyser v. Hitz, 133 U. S. 138, 10 S. Ct. 290, 294, 33 L. Ed. 531, as follows:

"We must not be understood as saying that the mere transfer of the stocks on the books of the bank, to the name of the defendant, imposed upon her the individual liability attached by law to the position of shareholder in a national banking association. If the transfers were, in effect, without her knowledge and consent, and she was not informed of what was so done—nothing more appearing—she would not be held to have assumed or incurred liability for the debts, contracts, and engagements of the bank. But if, after the transfers, she joined in the application to convert the savings bank into a national bank, or in any other mode approved, ratified, or acquiesced in such transfers, or accepted any of the benefits arising from the ownership of the stock thus put in her name on the books of the bank, she was liable to be treated as a shareholder, with such responsibility as the law imposes upon the shareholders of national banks."

In Williams v. Vreeland, supra, it was held that facts and cir-

cumstances concerning a wife's indorsement in blank of stock certificates are admissible in evidence to negative the inference that, by such indorsement, she ratified a prior unauthorized transfer of such stock to her by her husband, and assumed the duty promptly to remove her name from the bank books or suffer the liability imposed upon duly registered shareholders. The court said:

"As without doubt there is substantial evidence tending to show she had no actual intention to ratify, affirm, or acquiesce in her husband's anauthorized act, we must accept that as finally established."

But the provision in section 8961, making the stock book "conclusive evidence of the facts therein stated," does not appear in section 5151, Rev. St. U. S. (12 USCA, § 63), construed in the foregoing decisions. Does that destroy their usefulness in deciding the case at bar? In other words, is respondent, who would not otherwise be liable as a stockholder, prevented from proving her true status by that part of section 8961 above italicized?

California had from 1876 to 1927 a statute (Civil Cade, § 321) making the stock books of a bank conclusive evidence against a stockholder of the number of shares owned by him. In no bank case has the California court been confronted with the problem before us. In Welch v. Gillelen, 147 Cal. 577, 82 P. 248, 249, referring to the succeeding section, Civil Code, § 322, the court said:

"When the section declares that one shall be liable as a stockholder who appears upon the books to be such, it means one who knowingly or voluntarily permits his name to appear thereon as a stockholder."

In Blackert v. Lankford, 74 Okl. 61, 176 P. 532, 537, the court said:

"The rule announced by text-writers and by the federal and the state courts seems to be that a person whose name *rightfully* appears on the books of a banking corporation as a shareholder must respond as such to all the statutory liabilities imposed upon shareholders."

In that opinion the Oklahoma court had quoted with approval from 3 R. C. L. 399, in part as follows: "If a person *knowingly* permits his name to appear upon the stock books as a shareholder in fact, he will be estopped in favor of creditors from denying liability."

496

In construing that part of section 8961 which makes the stock books conclusive evidence of the facts therein stated, it should be borne in mind that that section also requires such book to show "a full and correct list of the names and addresses of all stockholders in the bank and the number of shares held by each." Under the evidence in this case the stock book did not show such a correct list. In a case recently decided, Veigel v. Dak. Trust & Sav. Bank, 225 N. W. 657, 659, this court said:

"Construing these two sections together [sections 8961 and 8779], it seems reasonable to say that the provisions of section 8961, that the stock book shall be conclusive evidence of the facts therein stated, is only intended to mean that one correctly listed as a stockholder shall not be permitted to deny that he is such, although the stock may, in fact, be owned by another. Both may be liable, although there can be but one satisfaction."

█ As indicated by the closing sentence of the above quotation, a different question of law was then before the court. However, despite the language of the statute, the stock books were not, in that case, held to be conclusive evidence. We are of the opinion that one may not be made liable to the creditors of a bank merely because the transfer agent of that bank, without his knowledge or consent, issues a certificate to him and makes an entry thereof on the stock book of the bank, when such person refuses to accept the stock, and in no way ratifies the unauthorized act of the bank officer, and has no knowledge that he appears on the stock book as a shareholder. Though recognizing, as in Farmers' State Bank v. Empey, supra, "When a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion," yet we believe that to hold respondent liable under the facts of this case would be an unwarranted invasion of property rights.

The judgment should be, and is, affirmed.

SHERWOOD, P. J., and POLLEY, BURCH, and BROWN, JJ., concur.

CAMPBELL, J., concurs in result.