## BLACKBURN CONST. CO. v. CEDAR RAPIDS NAT. BANK.

Circuit Court of Appeals, Tenth Circuit.
January 24, 1930.

No. 120.

Stephen A. George, of Ardmore, Okl., for appellants.

A. H. Sargent, of Cedar Rapids, Iowa (V. J. Bodovitz, of Oklahoma City, Okl., on the brief), for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

COTTERAL, Circuit Judge. The Cedar Rapids National Bank brought this action against the Blackburn Construction Company, a copartnership, to recover the amount of two promissory notes of that company, dated May 27, 1927, payable at that bank, due 30 and 60 days from date, for $7,500 and $5,000, with interest and attorneys' fees. The notes were payable to and indorsed by the company. It was alleged that the bank purchased the notes before maturity for value in due course, and the defendants failed and refused to pay them. Of the defenses pleaded in the answer, the company relied only upon payment to defeat the notes.

At the conclusion of the trial, counsel on both sides moved for a directed verdict. There was no request for other instructions. The court ruled the motions, withdrew the case from the jury and submitted it to the court, and, after reviewing the evidence, found for the bank, directed a verdict in its favor, denied the motion of the defendants, and rendered judgment on the verdict. The defendants appeal, assigning as error the direction of the verdict for the plaintiff and not for the defendants, and the failure of the court to submit additional instructions to the jury upon the issue as to discharge of the notes by the defendants' payments to Martin & Mueller, as the agents of the bank, of $133,-000, claimed to be a sum in excess of defendants' total indebtedness to the bank.

It is settled law that the Conformity Act of June 1, 1872 (section 724, tit. 28, U. S. Code [28 USCA § 724]), does not control the federal courts in instructing juries, that motions of both parties to direct a verdict, without other requests for instructions, are regarded as a joint request for findings of fact by the court, and a direction to the jury in accordance with such findings and the law applicable to them, thereby withdrawing the case from the jury, and that on appeal the sole questions open to review are whether the

findings of the court are based on substantial evidence and the law was correctly applied to them. Nudd v. Burrows, 91 U. S. 426, 23 L. Ed. 286; Indianapolis & St. L. Ry. Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898; Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654; Empire State Cattle Co. v. Atchison, T. & S. Ry. Co., 210 U. S. 1, 28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70; Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038; Linsky v. United States (C. C. A.) 6 F.(2d) 869; Jackson v. Bell (C. C. A.) 14 F.(2d) 61; Hover & Co. v. Denver & R. G. W. Ry. Co. (C. C. A.) 17 F.(2d) 881; Paine v. St. Paul Union Stockyards Co. (C. C. A.) 28 F.(2d) 463; Clapper v. Gamble (C. C. A.) 28 F.(2d) 755; Russell Wheel & F. Co. v. United States (C. C. A.) 31 F.(2d) 826. Our inquiry, therefore, is whether there was substantial evidence in support of the findings and the law applicable to them sustained the verdict and judgment.

█ It will suffice to refer briefly to the evidence. It appears to show, and we shall assume, the construction company owed the bank from time to time an aggregate debt of $133,000, and that the company's payments to Martin & Mueller exceeded that amount. There is no claim that the notes were otherwise paid, and no dispute that the bank acquired them in due course for value. The company, engaged in municipal contract work in Oklahoma, contracted with Martin & Mueller, fiscal agents, for their assistance in preparing financial reports and marketing their bonds, warrants, and certificates, for a compensation of 3 per centum thereof. The company arranged with them to obtain advances for its work by means of notes, payable to and indorsed by it, and the discounting of the notes at the appellee bank; Martin & Mueller taking credit therefor and remitting the proceeds to the company. In that way the notes in suit came into the bank. Martin & Mueller did not indorse the notes, but gave the bank a general guaranty as a protection against loss. The company assigned its municipal paper to them, and from time to time they paid the other notes held by the bank out of moneys collected by such paper or received from the company, also obtaining renewals of the company's unpaid notes, held by the bank. All this was certainly authorized by the company, and there is no claim to the contrary. And the bank had no communications with the company. From these transactions, a finding was justified that Mar-

tin & Mueller represented the company as its agents in receiving its moneys for application on the notes. As confirming this, Mr. Mueller testified that, in an important transaction with the company, involving $15,000, he represented the company.

As against this testimony, an officer of the bank testified the bank sent no notices of the maturity of the notes to the company and made no collections from it, and answered as follows:

"Q. In other words, the matter of notifying the makers of the notes and the collection of the notes was entrusted to Martin & Mueller by your bank? A. Yes, sir.

"Q. And left with them entirely? A. Yes, sir."

The testimony of defendants' attorney is corroborative of the same admission by the officer. That officer further stated the bank did not attempt to collect anything from the company's claim against Prague, Okl., which it appears was assigned to Martin & Mueller and by them to the bank, and collected by them and credited to the company, and he further answered that this matter was also left to them by their bank.

The foregoing testimony may be regarded as tending to show Martin & Mueller were the agents of the bank for the disposition of the moneys of the company. But the more reasonable meaning of it was that the management of the bank, deeming it was secure by their guaranty, looked to them as guarantors, merely took no part in obtaining the funds of the company for application on the notes, and had no thought of creating an agency for the purpose. Certainly no express authorization was given by the bank to Martin & Mueller, and the testimony referred to is consistent with the total absence of such authority. In any event, there is substantial evidence in the record to show that Martin & Mueller were the only agents of the company in receiving its moneys for disposition, and the receipt of the moneys by them in no way bound the bank. The trial court was therefore justified in finding they were such agents, and that the moneys they received were not payments on the notes until actually received by the bank. That finding accords with our view of the evidence.

With the facts thus found, it follows that it was rightly held as a matter of law that the notes, concededly not otherwise paid, are subsisting obligations of the company, and

required a directed verdict for the bank as well as judgment in its favor.

We find no error in the record, and the judgment is accordingly affirmed.