## SOUTHERN SURETY CO. v. FIDELITY & CASUALTY CO.

### No. 9003.

Circuit Court of Appeals, Eighth Circuit.
May 10, 1931.

Rehearing Denied June 18, 1931.

J. L. Parrish, of Des Moines, Iowa, for appellant.

Sidney J. Dillon, of Des Moines, Iowa, for appellee.

Before STONE and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

GARDNER, Circuit Judge.

The appellant, as plaintiff, brought suit against the appellee to recover on a reinsurance contract. No question is raised on the pleadings, but it should be noted that, in addition to its general denial, the defendant, in its amended and substituted answer, pleaded as an affirmative defense: (1) A fraudulent concealment of facts material to the risk; (2) the failure of Harris to secure from the Drovers' National Bank a depository bond; (3) that the contract had never been consummated because there had been no meeting of the minds with relation to the subject-matter thereof. The parties will be referred to as they appeared in the lower court.

On September 7, 1920, plaintiff and defendant entered into a general reinsurance contract which provided that either of them might offer to the other reinsurance contracts which might be accepted or rejected, the offer and acceptance, if any, to be upon a form made part of the general contract. It was also provided that when reinsurance was accepted it should be governed by the standard form of reinsurance agreements.

On February 27, 1924, one George T. Harris made application to the plaintiff for a fidelity bond as town collector of the town of Canteen, Ill., in the sum of $140,900, which bond plaintiff executed as surety. Thereafter, in accordance with its general reinsurance contract, on March 18, 1924, it offered to defendant the reinsurance of this bond to the extent of one-third, or $46,966.-66. The negotiations with reference to this

matter were carried on by correspondence, and with its letter of March 18, 1924, plaintiff inclosed the application for bond which Harris had signed. The application stated that the funds collected by Harris as collector would be deposited in the Drovers' National Bank of East St. Louis, Ill.; that such deposits would not at any time exceed $60,000; and that a depository bond would be secured by Harris to cover the deposit. It appears that the plaintiff had executed a prior bond for Harris on which the defendant had accepted reinsurance to the extent of one-third of the bond, and the previous bond was canceled when the new bond was executed. No answer having been received from the defendant to this communication of March 18, 1924, on April 11, 1924, the plaintiff again wrote, calling attention to the fact that defendant had not replied to plaintiff's offer of March 18th. This letter seems also to have been ignored, and under date May 15, 1924, plaintiff again wrote, calling attention to its letters of March 18 and April 11 in connection with this bond, and also calling attention to the fact that the defendant had reinsured the plaintiff to the extent of one-third of Harris' bond as collector for the year 1922, which bond was canceled as of March 23, 1924. The last paragraph of the letter reads as follows: "I am enclosing duplicate agreements herewith, and if this offer is acceptable I will thank you to sign both copies and return the original to us for the completion of our files."

Under date June 5, 1924, plaintiff again wrote defendant, not having any reply to its previous letters, and asked the defendant to look into the matter and advise, "whether or not you care to accept our offer so that we can endeavor to place this reinsurance elsewhere. It has now been almost three months since we first took this matter up with you, and we will therefore thank you to let us hear from you promptly so that we can get this case disposed of without further delay."

Under date June 23, 1924, the defendant wrote the plaintiff, saying:

"Reinsurance: $43,309    Our No: 1020778,

"Your No: 299827

"x1. We shall be glad to participate in this risk to the extent shown above."

Under date June 26, 1924, plaintiff wrote defendant, calling attention to the fact that defendant's acceptance of the reinsurance was not in the form provided for by the contract, and requesting that defendant execute and forward the proper form, saying:

"Signed reinsurance agreement was not attached to your letter when received at this office. Our file shows that we have sent you reinsurance agreements for signature on three different occasions, and I will therefore ask you to see that one set is properly executed on behalf of your company and the original returned to us for the completion of our files."

It is noted that while plaintiff tendered reinsurance in the sum of $46,966.66, defendant offered to accept such reinsurance only in the sum of $43,309.

On July 25, 1924, plaintiff wrote defendant a letter, advising it of the failure of the Drovers' National Bank and the appointment of a receiver, and the making of claims by the various beneficiaries under the Harris bond; that at the time of the closing of the bank Harris had on deposit therein the sum of $59,775.48. Under date August 1, 1924, the defendant replied, acknowledging receipt of the letter of July 25, 1924, and asking for further details. On August 4, 1924, plaintiff wrote defendant with respect to claims being made against it on account of the Harris bond, and among other things stated: "It will be necessary for us to pay the claim of the County Treasurer ——— amount $14,184.04 at once, and we shall thank you for your check for your proportion ——— amount $4,728.01."

Under date August 8, 1924, defendant wrote plaintiff with reference to the Harris bond as follows: "We are returning to you unexecuted the reinsurance agreements which you sent us on the above case as they are incorrectly drawn. We accepted only $43,309, and the agreements are made out for $46,966.07. Will you kindly have them corrected and return to us for execution."

Under date August 11, in response to defendant's letter of August 8, plaintiff wrote defendant, sending new agreements so as to state the correct amount, and stating: "Inasmuch as your account was credited with a premium of $165.90 being one-third of the total premium collected, we are to-day charging your account with a return premium of $12.93."

A document appearing in the record as Exhibit 15, dated August 11, 1924, addressed to defendant, recites that: "We beg to submit herewith reinsurance of $43,309.00 on the following bond to take effect March 1st, 1924."

The bond is then described, and indorsed on this document is the following:

"Southern Surety Company,
"Des Moines, Iowa.

"The above offer is hereby accepted to the extent of Forty Three Thousand Three Hundred Nine and No/100 — — — ($43,309.00) to take effect March 1st, 1924, subject to the terms of the general reinsurance agreement in force between our two companies, the initial premium being $152.97."

This was signed by the defendant, and received by plaintiff in due course of mail.

On August 18, though erroneously dated, plaintiff wrote defendant, saying, among other things: "We now know that you accepted reinsurance in the sum of $43,309.02, instead of one-third, and that your proportionate share of any loss we may sustain is therefore, 30.738% instead of 33.333%. Will you, therefore, please send us your check for $4,-359.89, this being your proportionate share of our first loss payment, etc."

The plaintiff's liability on the Harris bond, determined according to the standard form of reinsurance agreement as paid by it, amounted to the sum of $60,275.90, and it paid out for expense of investigation in connection with the settlement of the claim, the sum of $1,097.42. Of these amounts plaintiff had recovered at the time of the trial, $47,-931.44, so that if plaintiff was entitled to recover, it was entitled to recover the sum of $6,311.66.

Plaintiff paid defendant by check dated August 11, 1924, the sum of $383.25, as the premium for this reinsurance, which was received and retained by defendant, being tendered back for the first time in defendant's amended and substituted answer filed May 19, 1930.

Harris, the principal on the bond, failed to secure from the Drovers' National Bank the depository bond which he agreed in his application he would secure. Upon the taking over of the Drovers' National Bank, one R. R. Karraker was appointed receiver by the United States Comptroller of the Currency, and on May 22, 1924, plaintiff, as surety, executed a bond for Karraker in the sum of $75,000 as such receiver. The assistant superintendent of the defendant testified that he had under his direction the reinsurance business of the defendant company to the extent of surety bonds, which would embrace such a reinsurance contract as involved in this case; that he did not on August 11, or prior thereto, have any knowledge of the failure of the Drovers' National Bank of East St. Louis; that it was under his super-

vision and direction that the instrument dated August 11, 1924, which directly accepted the reinsurance on the bond in question to the extent of $43,309, was executed; that the company was one of the large surety companies, divided into various departments; that mail addressed to the Fidelity & Casualty Company of New York, without being directed to the attention of any particular department, is customarily distributed from a central point. Some one in charge of receiving such mail, opens it and examines it to see what department it should go to and sends it to the department he thinks ought to have it.

At the close of the testimony both parties moved for a directed verdict, and the case was taken from the jury and a verdict directed in favor of the defendant. It is this ruling of the lower court that is challenged by plaintiff on this appeal.

Both parties having moved for a directed verdict without any reservation, submitted to the trial judge the determination of the facts, and the court's decision has the same force and effect as a verdict of the jury, which, if sustained by substantial evidence, will not be disturbed by this court. Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038; Commissioners of Road Imp. Dist. v. St. Louis Southwestern Ry. Co., 257 U. S. 547, 42 S. Ct. 250, 66 L. Ed. 364; Aetna Ins. Co. of Hartford, Conn. v. Licking Valley Milling Co. (C. C. A.) 19 F.(2d) 177; Clapper v. Gamble (C. C. A.) 28 F.(2d) 755; Russell Wheel & Foundry Co. v. United States (C. C. A.) 31 F.(2d) 826; Hookway v. First Nat. Bank (C. C. A.) 36 F.(2d) 166; American Surety Co. v. Republic Casualty Co. (C. C. A.) 42 F.(2d) 807.

In directing a verdict for the defendant, the lower court expressed the view that the contract was the result of a mutual mistake; that the plaintiff had withheld knowledge of facts from the defendant material to the risk, of which the defendant had no knowledge; and that the contract was not valid because the minds never met upon the risk with full knowledge of all the facts.

It is to be observed that plaintiff's first offer to defendant was a reinsurance of one-third of the bond. To this offer, after repeated requests, defendant finally replied on June 23, 1924, agreeing to accept not one-third of the bond, but $43,309 thereof. Up to this point, it seems clear that the minds of the parties had not agreed upon the same

thing. However, under date June 26, plaintiff wrote defendant, saying: "We have your form letter of the 23rd, stating that you are willing to accept our offer of reinsurance to the extent of $43,309 in connection with our bond as above captioned."

The rest of the letter is with reference to the reinsurance agreements, and we think under all the evidence the court might have held as a fact that this constituted an acceptance by the plaintiff of the defendant's offer to reinsure in the amount of $43,309. But assuming that this is doubtful, there can be no doubt of the meeting of the minds of these parties on August 11, as indicated by the letter of the plaintiff of that date, returning to the defendant reinsurance agreements covering $43,309, and a formal submission of reinsurance in that amount, dated August 11, 1924, and the acceptance of the defendant of this specific offer. The contract of the parties was certainly then complete, and the minds of the parties met on every essential detail of the contract.

It is, however, contended that the plaintiff withheld from the defendant material facts pertaining to the risk which it knew at and prior to this time. Confessedly, plaintiff must have been charged with notice of the closing of the Drovers' National Bank, because it wrote a bond for its receiver on the 22d of May, 1924, but it is observed that on July 25, 1924, plaintiff wrote defendant advising that the Drovers' National Bank had closed and was in the hands of a receiver, and that demands were being made upon plaintiff on account of the bond. This letter was acknowledged by defendant under date August 1, 1924, with request for further details. On August 4, further details were given, and this, it will be noted, was at least one week before the final, definite, and positive acceptance of the reinsurance by the defendant. If it be said that the contract was consummated on the 23d of June, 1924, then the defendant acted without the disclosure of facts material to the risk, and it might have rescinded, had it acted promptly and returned the premium which it had received. This, however, it did not do after having received full information. It was, however, not bound to rescind the contract, and having retained the consideration after having knowledge of the facts alleged to have been concealed, it ratified and affirmed the contract. New York Life Ins. Co. v. Baker (C. C. A.) 83 F. 647; Northern Assur. Co. v. Grand View Bldg. Assn. (C. C. A.) 101 F. 77; Duncan v. Missouri State Life Ins. Co. (C. C. A.) 160 F. 646; Phoenix

Mut. Life Ins. Co. v. Raddin, 120 U. S. 183, 7 S. Ct. 500, 30 L. Ed. 644; Cooley's Briefs on Insurance (2d Ed.) Vol. 5, p. 4352.

If, on the other hand, the contract was not consummated until August 11, then it cannot possibly be maintained that any material facts were concealed from the defendant. Prior to that time, defendant had been fully advised as to the failure of the Drovers' National Bank, the amount of funds deposited by Harris therein, and the amount of the demands made up to that time under this bond. With this knowledge, it, nevertheless, entered into this contract, and is not now in position to assert or claim that it was fraudulently misled.

The suggestion that the contract was voided because Harris failed to secure a bond from the Drovers' National Bank securing his deposit is not tenable. His promise so to do was not a representation of a present fact or condition, but at most was only a promise of what he would do or cause to be done in the future, and this could not form the basis of a claim of false or fraudulent representations.

We are of the view that there was no substantial evidence to sustain a judgment for the defendant, and the judgment is therefore reversed, and the cause remanded for further proceedings consistent herewith.