**BRICKNELL et al. v. ST. JOSEPH STOCK YARDS BANK.***

No. 10309.

Circuit Court of Appeals, Eighth Circuit.

Feb. 13, 1936.

George I. Craven, of Lincoln, Neb., for appellants.

Maxwell V. Beghtol, of Lincoln, Neb. (George W. Groves and O. W. Watkins, both of St. Joseph, Mo., and Glen H. Foe, of Lincoln, Neb., on the brief), for appellee.

Before STONE, SANBORN, and BOOTH, Circuit Judges.

*Rehearing denied March 10, 1936.

SANBORN, Circuit Judge.

This appeal is from a judgment in an action at law to recover the amount due upon three notes belonging to the appellee, the payment of which was alleged to have been guaranteed by the appellants.

The facts out of which the controversy arises are, briefly, as follows:

A. Weiler was president of the Farmers Bank of Dunbar, Neb., which had an account with the appellee, St. Joseph Stock Yards Bank, and did business with that bank. Weiler was not permitted by the laws of Nebraska to borrow the funds of the bank of which he was president. (Section 8-149, Compiled Statutes of Nebraska 1929.) On November 4, 1924, Weiler borrowed $5,000 from the Stock Yards Bank. On December 10, 1926, he borrowed an additional $5,000 from that bank, and on July 5, 1927, he borrowed $2,000 more. He personally negotiated the loans and sent his notes to the Stock Yards Bank. The notes were on the forms of the Farmers Bank, were payable to that bank, and were indorsed by it without recourse. The transactions took this course because Weiler had no personal account at the Stock Yards Bank; so that it was for the convenience of that bank in transmitting the proceeds of the loans to Weiler to credit the account of the Farmers Bank with such proceeds. While the loans were made to A. Weiler personally, they appeared upon the books of the Stock Yards Bank as though the notes had been purchased from the Farmers Bank. The Stock Yards Bank was advised that Weiler wanted this money for his own use. All interest payments and all payments upon principal were made by Weiler personally. As the notes matured, he would send in renewal notes, using the forms of the Farmers Bank. These notes were usually indorsed without recourse by that bank. All the renewal notes were handled in the same way as the original notes. The old notes would be charged to the account of the Farmers Bank and the new notes credited to that account. This was all done for the benefit of Weiler, as the correspondence between him and the Stock Yards Bank clearly shows.

On July 25, 1930, the appellants executed and delivered to the Stock Yards Bank a guaranty, the full text of which

appears in the footnote.[1] Thereafter the Stock Yards Bank acquired three notes of A. Weiler payable to the Farmers Bank and indorsed by it, in renewal of the balance of his unpaid indebtedness. One of the notes was for $1,000 and dated June 1, 1931; one for $500, dated June 3, 1931; and one for $5,000, dated June 8, 1931. They were run through the books of the Stock Yards Bank in the same way as previous renewals of the same indebtedness.

Weiler died on June 28, 1931. The Stock Yards Bank filed the notes as a claim against his estate. The estate proved to be insolvent and paid only a small amount upon the notes. The Stock Yards Bank brought an action to recover the unpaid balance from the defendants upon their guaranty. They denied liabil-

---

[1] St. Joseph, Missouri,
July 25, 1930.

St. Joseph Stock Yards Bank,

Gentlemen: The undersigned, being interested in the business success of The Farmers Bank, and desiring to assist it in obtaining credit with you, and money from you, hereby request and authorize you to extend or advance to the said The Farmers Bank, such credit, accommodations and money, as it may, from time to time, request, and purchase from it, or any of its officers, notes, bills receivable, drafts, acceptances, checks or other instruments, or evidence of indebtedness, as you may desire, including instruments made payable direct to the St. Joseph Stock Yards Bank, for the benefit of the said The Farmers Bank, and discount for cash, for the said The Farmers Bank, whether or not endorsed by said bank, or any of its officers, with or without recourse, and in case you shall at any time purchase or discount for said The Farmers Bank, such note or notes, bills receivable, drafts, acceptances, checks or other instruments or evidence of indebtedness, or advance to said The Farmers Bank, any money, in any manner or upon any account, we, the undersigned, in consideration whereof, and of One Dollar ($1.00) in hand paid to us, hereby jointly, and severally, guarantee to you, your successors and assigns, the punctual payment at maturity, of any and all sums of money advanced, which now, or at any time hereafter, may be owing to you by the said The Farmers Bank, together with all costs of collection, including reasonable attorneys' fees, hereby waiving demand of payment and notice of non-payment and protest of all of the said instruments; and we hereby authorize you, at any time and in such manner and upon such terms as you see fit, to extend the time of payment for, or change the manner or terms of payment, of any such sum or sums of money, or any part thereof, as you deem best, without notice to us, and we hereby agree that such extension of time for, or change in the manner, or terms of payment, shall not in any manner release us from, or reduce our liability on this guaranty, and we hereby guarantee full payment to you, at maturity, of each and every one of such notes, bills receivable, drafts, acceptances, checks, or other instruments or evidence of indebtedness, purchased or discounted by you, as aforesaid, together with any sums of money obtained by the said The Farmers Bank from you in any wise, together with the interest thereon, and costs of collection, and we do hereby waive notice of the acceptance of this guaranty, and waive notice of the obtaining of any money by the said The Farmers Bank, or any of its officers, from you, and waive notice of any extension of time of payment, which you may make, at your discretion, provided however, that this is a continuing guaranty, and shall remain in full force and effect until written notice shall have been actually given you, at your office in So. St. Joseph, Missouri, and until the guaranteed amount has been paid; but even if this guaranty is revoked, such revocation shall not release us, or any of us, from any liability as to any note or notes, bills receivable, drafts, acceptances, checks, or other instruments, or evidence of indebtedness, held by you at the time of the receipt of notice of revocation.

No act of omission of any kind on your part in the premises shall in any way whatsoever affect or impair this guaranty.

You may, in your discretion, refuse to make any loans, or discount any paper, offered to you by said bank.

The release of any of the undersigned shall not release any of the others from the obligation hereunder.

It is understood that while this guaranty is a continuing guaranty, covering all items as mentioned herein, irrespective of the amount of the total aggregate of the credit extended, or discounts made, as herein mentioned, yet the undersigned shall not be called upon to pay, by virtue hereof, more than the sum of Twenty-five Thousand Dollars.

> Wm. H. Bricknell,
> G. J. Bricknell,
> L. R. Bricknell,
> Carl A. Weiler,
> Amalie M. Weiler,
> A. Weiler,
> Henry Griepenstroh.

ity. The case was tried. There was no dispute as to the facts. Both sides moved for a directed verdict. The court found for the Stock Yards Bank, and the guarantors appealed.

Where both parties request a peremptory instruction and do nothing more, they assume the facts to be undisputed, and, in effect, submit to the trial judge the determination of the inferences to be drawn. Upon review, a finding of fact by the trial court, under such circumstances, must stand if the record discloses evidence to support it. Williams, Receiver. v. Vreeland, 250 U.S. 295, 298, 39 S.Ct. 438, 63 L.Ed. 989, 3 A.L.R. 1038; W. A. Hover & Co. v. Denver & R. G. W. R. Co. (C.C.A.8) 17 F.(2d) 881, 883.

The question before us is whether, upon the facts proven, the court below, in holding that these notes of A. Weiler were covered by the guaranty sued upon, reached a permissible conclusion.

In consideration of the purchase of notes from or the advancement of money to the Farmers Bank "in any manner or upon any account" by the Stock Yards Bank, the appellants guaranteed (1) the punctual payment at maturity of any and all sums of money advanced, which at the time of the execution of the guaranty, or at any time thereafter, might be owing to the Stock Yards Bank by the Farmers Bank; (2) full payment, at maturity, of all notes purchased by the Stock Yards Bank from the Farmers Bank; (3) the full payment of any sums of money obtained by the Farmers Bank from the Stock Yards Bank "in any wise."

The guaranty became effective, and the Stock Yards Bank claims that, since the notes in suit were indorsed unconditionally by the Farmers Bank, they were covered by the guaranty. The Stock Yards Bank also argues that it must be held that there is evidence that the Farmers Bank received money or its equivalent for the notes.

Looking to the language of the contract, the subject-matter, and the surrounding circumstances (Nash v. Towne, 5 Wall, 689, 699, 18 L.Ed. 527), it seems reasonably clear to us that this guaranty was to cover money actually advanced to the Farmers Bank, notes actually purchased from the Farmers Bank, and money actually obtained by the Farmers Bank. It was to apply to real transactions; not to purely formal ones. We do not regard the giving of a bookkeeping credit to the Farmers Bank upon the substitution of the new notes of A. Weiler for old notes of A. Weiler—which was done for his individual benefit and not for that of the bank—as a real advancement of money to the Farmers Bank or the real purchase of notes from it. That bank constituted the means used by Weiler and the Stock Yards Bank to facilitate their dealings. The Farmers Bank was merely the conduit or agency through which these notes of A. Weiler and their proceeds passed, and was in no way interested in the notes, their proceeds, or the transactions out of which they grew. That this was the view of the Stock Yards Bank itself, prior to the bringing of this suit, is demonstrated by its communications with the bureau of banking of the state of Nebraska, dated May 9, 1931, February 29, 1932, and August 19, 1932, which were admissions by the Stock Yards Bank that on those dates these were not notes purchased or discounted by the Stock Yards Bank for which the Farmers Bank was liable to it, for it failed to list them as such. The bureau, in connection with examinations of the Farmers Bank, had called for information as to the liability of the Farmers Bank to the Stock Yards Bank on notes purchased or discounted. It might, perhaps, be argued that, since the court below excluded evidence that Weiler ever received the proceeds of his various notes, either in the form of money or credits, it must be found that the Farmers Bank received them. A complete answer to this is that the record shows that whatever moneys or credits were given by the Stock Yards Bank to the Farmers Bank were intended for Weiler, and amounted to payments made or credits given to his designated agent for him.

That mere entries on the books of the banks would be an insufficient basis for a finding that these notes were in fact purchased or discounted, or that the Farmers Bank actually obtained moneys for them, where all the evidence is to the contrary, cannot be questioned. Frequently, in tax cases, similar questions have arisen. Douglas et al. v. Edwards (C.C.A.2) 298 F. 229; Helvering v. Missouri State Life Ins. Co. (C.C.A.8) 78 F.(2d) 778, 780; Stern-Slegman-Prins Co. v. Commissioner (C.C.A.8) 79 F.(2d) 289,

291. "The decision must rest upon the actual facts, which in the present case are not in dispute." Doyle v. Mitchell Brothers Co., 247 U.S. 179, 187, 38 S.Ct. 467, 470, 62 L.Ed. 1054.

Our conclusion is that these notes were not within the terms of the guaranty, and that the court should have found for the appellants.

The judgment is reversed.