OPINION
By STEVENS, J.
The action in the trial court sought the recovery of $2500 from each of the defendants, Schulman and Guren, as superadded liability upon shares of stock of the First-Central Trust Co., of Akron, Ohio, of which it was claimed the defendants were the real owners. The facts as disclosed by the record are these:
Prior to June 7, 1932, each defendant was the owner of 50 shares of the stock of the First-Central Trust Co., which shares were hypothecated with said bank as collateral security for loans made by the bank to the defendants. The certificates for said stock were accompanied by powers of attorney, authorizing the transfer of the collateral by the bank in case of default in payment of the obligations for the payment of which the stock was hypothecated as security.
Prior to June 7, 1932, the defendants, desiring to create estates for their minor sons, directed the officers of the bank to transfer their stock on the records of the bank to their minor sons; the new certificates, however, to remain with the bank as collateral security for the loans heretofore mentioned.
On June 7, 1932, transfers of said stock to said minors were made by the proper officials of the bank upon the bank records, and stock certificates therefor were issued in the names of the minors as follows: Jack Guren, 50 shares; Allen Schulman, 25 shares; Bernard Schulman, 25 shares.
The certificates standing in the names of the minors continued to be held by the bank as collateral *298 for the loan of the defendants, and were so held at the time the superintendent of banks took possession of the bank for liquidation, on June 21, 1933.
Thereafter, the superintendent made demands upon the three minors for payment of the super-added liability upon said stock, and when a plan for resumption of banking business was approved by the superintendent, those minor stockholders signed consents to that plan, and, in accordance with the provisions thereof, promptly paid to the superintendent 10% of the amount of the liability assessed against them, which payment was accomplished in part by a seizure of the liquidating dividends payable to the minors upon savings deposits which they had in said bank. Those deposits evidenced the minority of the depositors, by showing the names of the adult persons whose signatures were required for withdrawals from the accounts.
At the expiration of the 3-year extension granted to each stockholder by the provisions of the plan, the superintendent made demand upon each of the minors for the remaining 90% of his double liability, and each was told that he might execute a note for the 90% if he would immediately pay the par value of the stock of the resuming bank standing in his name.
Each of the minors paid the amount required by the superintendent, who accepted it and gave receipts to the minors, and each of the minors executed his note for the 90% balance which the superintendent had demanded from him. These notes were accepted and retained by the superintendent, and are still held by him, and no tender of surrender has ever been made. No demands for payments were made on either of the defendants, nor were notices sent to them.
The trial court rendered judgment in favor of the defendants, and appeal on questions of law lodges the cause in this court.
The appellant, as evidenced by its brief, conceives the case to present a single question, as follows:
Does an adult cease to be a stockholder in a corporation authorized to receive money on deposit (within the meaning and intent of such phrase as used in Sec. 3 of Art. XIII of the Constitution, of the State of Ohio) by a transfer of his stock certificate to an infant who did not attain majority prior to the insolvency and closing of such bank?
The brief of the appellees sets up four propositions of law which it is claimed this appeal by the superintendent of banks presents, as follows:
1. May the superintendent of banks z’ecover so-called double liability from a person who was not a stockholder of the bank at the time the superintendent took .possession, or within sixty days prior to his taking possession?
2. Assuming that the answer to the first question is “no,” is a diffei'ent answer to be given when the defezzdants are persons who were stockholders at one time and have made transfers to persons who are minors?
3. Can the superintendent of banks seek to establish liability against the under-age transferees, and, after having taken affirmative steps to establish liability upon them, abandon such efforts and assert liability as against their transferors?
4. Does the acceptance of notes by the superintendent operate as payment of the stockholders’ liability, leaving the superintendent without right to maintaizi this action for double liability, and only *299 a right to look to the makers of the notes?
It is asserted by appellant that this case “does not involve an attempt to hold persons who were former stockholders, but solely those who have not ceased to be stockholders in fact as to double liability.”
In this connection it is urged that “the defendants on June 21, 1933, and July 15, 1933, in respect to double liability were stockholders of the First-Central Trust Co., because the infant transferees of their certificates were without legal capacity to bind themselves therefor.”
In support of this contention the dictum of Judge Zimmerman in the opinion in Squire, Supt., v Standen, Gdn., et al., 135 Oh St 1, at p. 3, is cited. It is there stated:
“Because of the contractual element connected with the ownership of bank stock, it generally has been held that an infant owner of such stock, to whom it has been issued or transferred, does not possess the necessary legal capacity to bind himself for the added liability, and cannot be made tc respond when its enforcement is sought against him. In such case, the transferror of the stock or his estate has been held subject to the double liability. * * * Early, Recr., v Richardson, 280 U. S., 476 * * *; Seabury, Recr., v Green, Admx., 294 U. S., 165 * *
The further contention is made that, there being no Ohio decision squarely determinative of the question presented, and the Ohio banking code having been taken almost verbatim from the national banking act, the Ohio courts should adopt the construction placed upon the national banking act by the federal courts, as the rule to be followed in construing the state banking code.
The rule under the federal act is stated as follows in Pottorff v Dean, 8 Fed. Supp. 670:
“The correct rule established by the cases undoubtedly is that there shall at all times be a holder of sufficient legal capacity to assent to the statutory liability and one who has so assented. Keyser v Hitz, 133 U. S. 138 * * *; Foster v Chase (C. C.), 75 F. 797; Williams v Vreeland, 250 U. S. 295 * •
As opposed to the above contentions, appellees assert that the federal rule can have no application in Ohio because of the decision of the Supreme Court of Ohio in Squire, Supt., v Solinski, 132 Oh St 180. In that case the court, in a per curiam opinion, stated, at pp. 182-183:
“Sec. 710-75 GC, in our opinion, makes no change in bank stockholders’ constitutional superadded liability. It neither enlarges nor diminishes it. It does not create new, or extend existing, liabilities. Under the law, a stockholder is liable for all debts of the banking corporation existing while a stockholder. This liability is continuous and is not discharged by subsequent bona fide transfer (Brown v Hitchcock, 36 Oh St 667) without consent of corporate creditors.
“When a stockholder sells his stock to another and the transfer is entered upon the corporation records, such transfer effects a novation, with the consent of the corporation, substituting the transferee for the transferor, and the transferee succeeds to all the rights, benefits and liabilities of the transferor as between stockholders. However, as to creditors, a novation cannot thus be effected without the consent of the creditors. The corporation is the unconditional debtor. A stockholder is a conditional debtor. *300 Two debtors cannot effect a novation discharging one another from their obligations to a common creditor. To effect a novation as to a creditor, the creditor’s consent must first be obtained. However, since every depositor is a creditor of the banking institution, it is not practical to obtain the consent of each indvidual depositor. The statutory provision renders the stock transfer ineffective if the bank fails within a period of sixty days following such transfer. In other words, the transfer is effective as to creditors if the bank continues to meet its obligations for a period of sixty days following transfer. The lapse of sixty days operates as a substitute for and has the effect of consent by creditors, and effects a novation as to creditors. This must be deemed to have been the intention of the Legislature.”
In the instant case, the bank continued to meet its obligations for more than 60 days after the transfer of the stock from the defendants to the minors; in fact, for more than one year thereafter. The bank had full knowledge of the transfers, for they were accomplished through the officers of the bank, and no question concerning them was raised by the creditors of the bank within the 60-day period, nor was any question raised by the representative of the creditors (the superintendent of banks) for more than five years after the transfers.
Under the- rule announced in Squire, Supt., v Solinski, supra, a novation was accomplished, and if the minors were persons legally capable of holding the stock and assenting to the contractual obligation incident thereto, the defendants, under the facts here present, were relieved from liability thereon.
Were the minors persons legally capable of assenting to the contractual obligations incident to the ownership of the stock?
In this state the rule is well established that the contract of a minor is not void, but is’ voidable. Union Central Life Ins. Co. v Hilliard, Admr., et al., 63 Oh St 478.
Numerous cases are cited by appellant which it is argued support its contention that a minor has not the legal capacity to assent to the contractual obligation attendant upon the ownership of bank stock.
Analysis of those cases shows the federal eases to present entirely different factual situations than the one under consideration, and the state cases to be from states where the contract of a minor is void, and not voidable, as in Ohio.
The transfer of the bank stock to the minors resulted in their becoming liable to the bank’s creditors in the event of the bank’s insolvency. By becoming stockholders of record, they promised to perform that obligation. Their promise to so perform was voidable. In the novation accomplished by the transfer, and the lapse of 60 days, that voidable promise was sufficient consideration to discharge their transferors.
The bank and then existing creditors of the bank were not required to accept that voidable promise. For 60 days they had the right to challenge the transfer. Failing to do this, the transfer became absolute, the transferors were discharged from further liability upon the stock, and the bank and its creditors accepted the voidable promise of the minors in substitution for that of the transferors.
*301 So long as the voidable promise of the minors was not disaffirmed, the contractual undertaking by the minors continued to be a valid contract, and was so treated by the superintendent of banks.
It is our conclusion that the minors were persons legally capable of holding stock of the bank, and of assenting to the contractual obligations attendant thereon.
It is the opinion of this court that the superintendent, having elected to pursue his remedy against the minors, as evidenced by his many official acts in that connection, is now estopped to successfully assert the liability of the transferors.
Our conclusion that the minors have the legal capacity to hold bank stock, and that the superintendent is estopped to pursue the transferors, makes unnecessary a consideration of the other contention of the appellees.
Judgment affirmed.
WASHBURN, PJ., & DOYLE, J., concur.