**TOP OF IOWA COOPERATIVE, an Iowa cooperative, Plaintiff,**

**v.**

**Virgil E. SCHEWE, Defendant.**

**No. C 96–3146–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

June 19, 2001.

and Schoenebaum, P.L.C., Des Moines, IA, for plaintiff.

Matthew L. Benda, Peterson, Savelkoul, Schlichting & Davies, Ltd., Albert Lee, MN, Robert P. Malloy, Malloy Law Firm, Goldfield, IA, for defendant.

Sean P. Moore, Brenton D. Soderstrum, Brown, Winick, Graves, Gross, Baskerville

———

**MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' POST–TRIAL MOTIONS**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *BACKGROUND* ........................................................713

II. *LEGAL ANALYSIS* ..................................................713
 A. *Top Of Iowa's Motion For Judgment As A Matter Of Law* .................713
 1. *Arguments of the parties* .........................................713
 2. *Applicable standards* ............................................714
 3. *Sufficiency of the evidence* ......................................717
 a. *Evidence of a fiduciary relationship* ...........................717
 b. *Evidence of breach of a fiduciary duty* .........................719
 4. *Damages* ........................................................719
 B. *Schewe's Post–Trial Motion* ......................................720
 1. *The legal bar to Top of Iowa's recovery* ..........................721
 a. *Preservation of the issue for post-trial consideration* ..............721
 b. *Effect of the finding of breach of fiduciary duty* .................722
 2. *Sufficiency of the evidence of Schewe's breach of contract* ...........725
 a. *"Meeting of the minds"* ........................................726
 b. *Top of Iowa's adequate performance* ............................727
 c. *Failure to provide Schewe with an opportunity to deliver grain* ........727
 3. *Inconsistency of the verdicts* ....................................727
 a. *Applicable standards* ..........................................728
 b. *Application of the standards* ...................................728

III. *CONCLUSION* ......................................................729

Following a trial in a case involving so-called "hedge-to-arrive" or HTA contracts for the sale and purchase of grain, a jury returned a verdict in favor of the plaintiff elevator on its claim that the defendant producer breached the contracts, but also entered a verdict in favor of the producer on his counterclaim that the elevator breached its fiduciary duty by failing to disclose material information concerning the "riskiness" of the HTAs. Both parties have filed post-trial motions, the producer for judgment as a matter of law, amendment of the judgment, or new trial on the elevator's breach-of-contract claim, and the elevator for judgment as a matter of law on the producer's breach-of-fiduciary-duty counterclaim. The thread running through the motions, in addition to the common assertion that the evidence is insufficient to sustain unfavorable portions of the verdict, is the question of the effect of the finding that the elevator breached its fiduciary duty upon the elevator's claim

(and the jury's verdict) that the producer breached the contracts at issue.

## I. BACKGROUND

This matter came to trial on April 2, 2001, on plaintiff Top of Iowa Cooperative's claim of breach of contract against defendant Virgil Schewe and Schewe's counterclaims of breach of contract and breach of fiduciary duty against Top of Iowa. On April 5, 2001, the jury returned a verdict (1) in favor of Top of Iowa on its breach-of-contract claim with an award of $60,900.00 in damages; (2) against Schewe on his counterclaim of breach of contract; and (3) in favor of Schewe on his counterclaim of breach of fiduciary duty with an award of $3,400.00 in damages.

On April 18, 2001, Schewe filed a motion for post-trial relief, seeking the following: (1) an order setting aside Top of Iowa's judgment for breach of contract owing to Top of Iowa's failure to disclose all material facts relating to the contracts; (2) an order amending the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to eliminate Top of Iowa's judgment for $60,900; (3) an order pursuant to Rule 50 of the Federal Rules of Civil Procedure granting Schewe's renewed motion for judgment as a matter of law on Top of Iowa's breach-of-contract claim; or (4), in the alternative, an order for a new trial pursuant to Rule 59, because of an inconsistent and contradictory jury verdict. Top of Iowa resisted Schewe's post-trial motion on May 7, 2001. On April 19, 2001, Top of Iowa filed its own post-trial motion, consisting of a renewed motion for judgment as a matter of law on Schewe's breach-of-fiduciary-duty counterclaim pursuant to Rule 50 of the Federal Rules of Civil Procedure. By letter dated May 10, 2001, Schewe notified the court that he did not intend to file additional arguments in resistance to Top of Iowa's post-trial mo-

tion, because his resistance to Top of Iowa's arguments was adequately set forth in his memorandum in support of his own post-trial motion.

Neither party expressly requested oral arguments on the post-trial motions and the court concludes that no further arguments are required. Therefore, these matters are now fully submitted.

## II. LEGAL ANALYSIS

The court will begin its legal analysis with consideration of Top of Iowa's motion for judgment as a matter of law on Schewe's counterclaim of breach of fiduciary duty. If the court grants Top of Iowa's motion, Schewe's premise for post-trial relief on all of the issues he raises—that the jury's finding that Top of Iowa breached its fiduciary duty bars or is inconsistent with the jury's verdict in favor of Top of Iowa on its breach-of-contract claim—will be eliminated, thus necessarily defeating Schewe's post-trial motion. However, if the court denies relief on Top of Iowa's post-trial motion, and allows the jury's verdict to stand on Schewe's counterclaim of breach of fiduciary duty, the court must necessarily also consider Schewe's post-trial motion concerning the effect of that verdict upon Top of Iowa's breach-of-contract claim.

### A. Top Of Iowa's Motion
### For Judgment As A
### Matter Of Law

#### 1. Arguments of the parties

In support of its renewed motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure, Top of Iowa argues that Schewe failed to produce any evidence that a fiduciary relationship existed between Schewe and Top of Iowa and that, if there is sufficient evidence that such a relationship existed, Schewe failed to produce any evi-

dence that Top of Iowa breached its fiduciary duty. More specifically, Top of Iowa argues that Schewe failed to present any evidence that Top of Iowa or Paul Nesler, Top of Iowa's grain merchandiser, exercised "dominant influence" over Schewe. Instead, Top of Iowa argues that the evidence, including Schewe's testimony, shows that Schewe was an experienced farmer who made his own marketing decisions, and that, although he occasionally discussed with Nesler his opinions about grain marketing, Schewe recognized that Nesler's opinions were speculative, not guarantees about what the market would do. In short, Top of Iowa argues that the relationship between the parties here was an arm's-length commercial relationship. Moreover, Top of Iowa argues that, if a fiduciary relationship somehow existed, there is no evidence that Top of Iowa breached its fiduciary duty to inform Schewe about the "riskiness" of HTAs. Top of Iowa argues that the record is full of evidence that Top of Iowa informed Schewe about the effect of market moves, positive and negative, on Schewe's HTAs, informed him promptly of the price "spread" on "rolls" of his HTAs, that Schewe signed a risk disclosure statement informing Schewe that margins and penalty fees would ultimately be assessed to the producer, and that Schewe attended two seminars for grain producers concerning HTAs, but chose to ignore whatever information he was given about the potential negative side of entering into HTAs. Top of Iowa also points out that Schewe could have avoided any "risk" inherent in his HTAs by delivering grain in the fall of 1995, instead of "rolling" the contracts, but he made the choice not to incur the costs of waiting in line to unload his corn at the elevator that fall.

Schewe, however, contends that there is evidence in the record of the long relationship between Schewe and Top of Iowa and his reliance on and trust in Paul Nessler, just as there is copious evidence that Top of Iowa had superior knowledge about and experience in the grain industry. Schewe contends further that, in response to Nessler's invitation to do so, Schewe placed his trust and confidence in Top of Iowa's advice by entering into the HTAs in the spring of 1995 and by delivering some of his corn for cash in the fall of 1995, and storing the rest, instead of delivering all of his corn at that time pursuant to his HTAs. Schewe contends that Top of Iowa's board of directors and managers were aware of rallying corn prices as early as January 2, 1996, and that Schewe's expert testified that Top of Iowa's representatives should have known as early as June of 1995 that the price of corn could be the highest in history based on the USDA's stocks-to-use ratio. Schewe also contends that Top of Iowa had day-to-day information about moves in the corn market and margin calls, which should have warned Top of Iowa of the increasing "riskiness" of carrying HTAs on the Chicago Board of Trade (CBOT). Schewe contends that the jury properly found that Top of Iowa never disclosed to him the risk inherent in the HTAs, which should have been apparent from all of this information available to Top of Iowa.

### 2. Applicable standards

■ This court recently stated the standards applicable to a post-trial motion for judgment as a matter of law in *Mercer v. City of Cedar Rapids*, 129 F.Supp.2d 1226 (N.D.Iowa 2001), as follows:

> The standards for a motion for judgment as a matter of law are outlined in Rule 50 of the Federal Rules of Civil Procedure. In pertinent part, Rule 50 provides:
>
> (a) **Judgment as a Matter of Law.**

(1) If during the trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before the submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

**(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial.** If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:

(A) allow the judgment to stand,

(B) order a new trial, or

(C) direct entry of judgment as a matter of law; or

(2) if no verdict was returned;

(A) order a new trial, or

(B) direct entry of judgment as a matter of law.

FED R.CIV.P. 50(a)–(b).

The Eighth Circuit Court of Appeals reiterated the standards to be applied by the district court—as well as the appellate court—in determining a motion for judgment as a matter of law:

When the motion seeks judgment on the ground of insufficiency of the evidence, the question is a legal one. *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir.1997); *Jarvis v. Sauer Sundstrand Co.*, 116 F.3d 321, 324 (8th Cir.1997). A jury verdict must be affirmed " 'unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could have not found for that party.' " *Stockmen's Livestock Mkt., Inc. [v. Norwest Bank of Sioux City* ], 135 F.3d 1236, 1240–41 (8th Cir.1998) (quoting *Chicago Title Ins. Co. v. Resolution Trust Corp.*, 53 F.3d 899, 904 (8th Cir.1995)).

*Cross v. Cleaver*, 142 F.3d 1059, 1066 (8th Cir.1998); *accord Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2109 147 L.Ed.2d 105 (2000) (stating that under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.") (citations omitted). Thus, this standard requires the court to:

"[C]onsider the evidence in the light most favorable to the prevailing party, assume that the jury resolved all conflicts of evidence in favor of that party, assume as true all facts which the prevailing party's evidence tended to prove, give the prevailing party the benefit of all favorable inferences which may reasonably be drawn from the facts, and deny the motion, if in light of the foregoing, reasonable ju-

rors could differ as to the conclusion that could be drawn from the evidence."

*Minneapolis Community Dev. Agency v. Lake Calhoun Assoc.,* 928 F.2d 299, 301 (8th Cir.1991) (quoting *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 989 (8th Cir.1989)); *see also Stephens v. Johnson,* 83 F.3d 198, 200 (8th Cir.1996) (citing *Whitnack v. Douglas County,* 16 F.3d 954, 956 (8th Cir.1994), in turn, quoting *Hastings v. Boston Mut. Life Ins. Co.,* 975 F.2d 506, 509 (8th Cir.1992)); *Haynes v. Bee–Line Trucking Co.,* 80 F.3d 1235, 1238 (8th Cir.1996); *Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 800 (8th Cir. 1994) (reiterating these factors, citing *White v. Pence,* 961 F.2d 776, 779 (8th Cir.1992)); *McAnally v. Gildersleeve,* 16 F.3d 1493, 1500 (8th Cir.1994) (same).

This standard for consideration of a motion for judgment as a matter of law accords the jury's verdict substantial deference. *Tilson v. Forrest City Police Dep't,* 28 F.3d 802, 806 (8th Cir.1994), *cert. denied,* 514 U.S. 1004, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995); *McAnally,* 16 F.3d at 1500. However, even with this deference to the jury's verdict, the jury cannot be accorded "the benefit of unreasonable inferences, or those 'at war with the undisputed facts,' " *McAnally,* 16 F.3d at 1500 (quoting *City of Omaha Employees Betterment Ass'n v. City of Omaha,* 883 F.2d 650, 651 (8th Cir.1989), in turn, quoting *Marcoux v. Van Wyk,* 572 F.2d 651, 653 (8th Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978)), but the court must still defer to the jury's resolution of conflicting testimony. *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

*Mercer,* 129 F.Supp.2d at 1230–32.

The parties do not assert that any additional or different standards are applicable (indeed, they cite no standards applicable to their post-trial motions, apart from passing references to Rules 50 and 59), and the standards cited in *Mercer* appear to be fully in accord with those stated in recent decisions of the Eighth Circuit Court of Appeals. *See, e.g., Foster v. Time Warner Entertainment Co.,* 250 F.3d 1189, 1197 (8th Cir.2001) (page citations unavailable) ("Judgment as a matter of law is proper only when there is a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party.") (internal quotation marks and citations omitted); *Children's Broadcasting Corp. v. Walt Disney Co.,* 245 F.3d 1008, 1015 (8th Cir.2001) ("Judgment as a matter of law [post-trial] is warranted only when all the evidence points in one direction and no reasonable interpretations support the jury's verdict."); *Tatom v. Georgia–Pacific Corp.,* 228 F.3d 926, 931–32 (8th Cir.2000) (articulating similar standards, noting that " '[t]his demanding standard reflects our concern that, if misused, judgment as a matter of law can invade the jury's rightful province,' " quoting *Gardner v. Buerger,* 82 F.3d 248, 251 (8th Cir.1996), and that "[a] jury's verdict should not be lightly set aside, but in this case our duty is to do so"); *Belk v. City of Eldon,* 228 F.3d 872, 877–78 (8th Cir.2000) (articulating similar standards and noting, *inter alia,* that "[p]ost-verdict judgment as a matter of law is appropriate only where the evidence is entirely insufficient to support the verdict"), *cert. denied,* —— U.S. ——, 121 S.Ct. 1734, 149 L.Ed.2d 659 (2001). Therefore, the court will apply these standards here.

Schewe does not contend that the procedural prerequisites for Top of Iowa's post-verdict motion for judgment as a matter of law have not been satisfied in this case.

*See, e.g., Belk,* 228 F.3d at 877 n. 3 (declining to reach a contention that was not raised in the defendants' pre-verdict motion for judgment as a matter of law, citing FED.R.CIV.P. 50(b) *cmt.* (1991), which states, "A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."). Therefore, the court turns to the question raised by Top of Iowa concerning the insufficiency of the evidence in support of Schewe's counterclaim of breach of fiduciary duty.

### 3. Sufficiency of the evidence

The question of whether a fiduciary duty existed between the parties and the further question of whether Top of Iowa breached a fiduciary duty, if one existed, were extremely close on the record presented to the jury; indeed, had the court been the trier of fact, the verdict would have been different. Nevertheless, the court cannot say that "there is a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for [Schewe]", *see Foster,* 250 F.3d at 1194 (page citations unavailable) (internal quotation marks and citations omitted), that the evidence "points in one direction and no reasonable interpretations support the jury's verdict," *see Children's Broadcasting Corp.,* 245 F.3d at 1015, or that the evidence is "entirely insufficient to support the verdict," *see Belk,* 228 F.3d at 878, such that judgment as a matter of law in favor of Top of Iowa is appropriate on Schewe's breach-of-fiduciary-duty counterclaim, notwithstanding the jury's verdict in favor of Schewe.

■ To prevail on his counterclaim of breach of fiduciary duty, the jury was instructed that Schewe had to prove the following four elements by the greater weight of the evidence: (1) Top of Iowa owed a fiduciary duty to Mr. Schewe; (2) Top of Iowa breached the fiduciary duty it owed to Mr. Schewe; (3) the breach of fiduciary duty was a proximate cause of damage to Mr. Schewe; and (4) the amount of damages, if any. *See* Final Jury Instruction No. 6.[1] Top of Iowa thus challenges the sufficiency of the evidence on elements one and two of Schewe's breach-of-fiduciary-duty counterclaim.

### a. Evidence of a fiduciary relationship

■ As to the first of the challenged elements, existence of a fiduciary relationship, the court further instructed the jury as follows:

A "fiduciary relationship" is a relationship of trust and confidence on a subject between two persons. One of the persons is under a duty to act for or give advice to the other on that subject. Confidence is placed on one side, and domination and influence result on the other. Circumstances that may indicate the existence of a fiduciary relationship include the acting of one person for another, the having and exercising of influence over one person by another, the placing of confidence by one person in another, the dominance of one person by another, the inequality of the parties, and the dependence of one person upon another. None of these circumstances

---

1. As the court explained in a letter to the parties, which is part of the record in this case, *see* Order Regarding The Court's Proposed Preliminary And Final Instructions To The Jury, March 24, 2001 (attached letter), the elements of this claim are drawn from Iowa Civil Jury Instruction 3200.1, with explanations of the elements drawn of Iowa Civil Jury Instructions 3200.2 and 3200.3 and Iowa decisions discussed by this court in *Gunderson v. ADM Investor Servs., Inc.,* 85 F.Supp.2d 892, 920–21 (N.D.Iowa 2000). The parties have not challenged on post-trial motions the court's instructions to the jury on this counterclaim.

is more important than another. A fiduciary relationship can therefore exist when the evidence indicates that (1) one of the parties enjoyed superior or excessive influence over the other; (2) the parties had a confidential relationship and one of the parties had greater access to facts and legal resources; or (3) there was a disparity of business experience and an invitation to the party with lesser experience to place confidence in the advice of the other party. It is for you to determine from the evidence whether a fiduciary relationship existed between the parties.

If a fiduciary relationship exists, a fiduciary has a duty to disclose all material facts in dealing with the other party to permit the other party to make an intelligent, knowing decision in such dealings. A fact is material if a reasonable person would consider it to be important in making a decision.

Final Jury Instruction No. 6 (explanation to element one).

■ The jury heard evidence that Paul Nessler is an experienced grain merchandiser who engages in daily "hedging" transactions on the CBOT to hedge Top of Iowa's grain purchases from producers. The jury also heard evidence that Larry Peterson, the general manager of Top of Iowa, had been a licensed broker on the CBOT. While Schewe was an experienced grain producer, there is no evidence that he engaged in frequent, complex, or sophisticated hedging transactions as a routine part of his marketing strategy. Thus, the jury could have reasonably inferred that Top of Iowa possessed superior knowledge and experience with grain transactions involving any sort of "hedging" or speculation about the future performance of the grain market. *See id.* The jury also heard evidence that before Schewe entered into his HTAs, when his

HTAs were "rolled" to the spring of 1996, and thereafter, Top of Iowa was receiving more information than Schewe that should have warned Top of Iowa about the increasing volatility of the corn market and the potential risks of inverse spreads if HTAs were "rolled." This evidence, again, would have allowed a reasonable jury to infer that Top of Iowa possessed superior knowledge about the actual risks of rolling HTAs, instead of simply delivering grain pursuant to the contracts. *Id.* Moreover, if Schewe's testimony was believed by the jury, the jury could reasonably have concluded that Schewe was invited and encouraged to enter into the HTAs in the first place based on the advice of representatives of Top of Iowa, that Schewe was led to believe that Top of Iowa would look after "it's side" of the HTAs, which Schewe understood to be managing the "hedging" side of the transactions, margin calls, and keeping track of price "spreads," and, based on the statements of Top of Iowa representatives and Schewe's long experience reposing trust in Paul Nessler, Schewe relied on Top of Iowa for guidance in making his decisions concerning entering into and managing his HTAs, including the decision to sell some grain on the cash market in the fall of 1995, rather than deliver on the HTAs, and to store some of his grain until the spring of 1996. *See id.* (a fiduciary relationship may arise, *inter alia,* where "there was a disparity of business experience and an invitation to the party with lesser experience to place confidence in the advice of the other party").

Thus, the jury could have reasonably concluded that a fiduciary duty existed, even though the court finds that there is also very substantial evidence creating contrary inferences, including inferences that Schewe made his own marketing decisions, disregarded or ignored information Top of Iowa provided to him about HTAs generally before he entered into any such

contracts, and disregarded notices concerning the effect of "rolling" his HTAs. Therefore, the court concludes that there was sufficient evidence of a fiduciary relationship between the parties to sustain the jury's verdict on Schewe's breach-of-fiduciary-duty counterclaim. *See Foster,* 250 F.3d at 1194; *Children's Broadcasting Corp.,* 245 F.3d at 1015; *Belk,* 228 F.3d at 878.

### b. Evidence of breach of a judiciary duty

■ Top of Iowa argues, however, that even if there was sufficient evidence of a fiduciary relationship, there was insufficient evidence that Top of Iowa breached the resulting fiduciary duty. As to the second element of Schewe's counterclaim of breach of fiduciary duty, the "breach" element, the jury was instructed as follows:

> Mr. Schewe contends that Top of Iowa breached its fiduciary duty to him when Top of Iowa failed to disclose adequately the riskiness of the HTAs. It is a breach of fiduciary duty for a fiduciary to fail to perform the duty to disclose all material facts in dealing with the other party to permit the other party to make an intelligent, knowing decision in such dealings.

Final Jury Instruction No. 6. As to this element, the evidence presents, if anything, an even closer question than the evidence pertaining to element one.

■ Nevertheless, the jury heard evidence from Schewe at trial that Top of Iowa failed to advise Schewe of the possibility of "inverse" spreads before he entered into HTA contracts or even to send him notices of the "rolls" from the fall of 1995 to the spring of 1996 and the resulting "spreads" on his HTAs. From this testimony—which the jury apparently believed, notwithstanding Top of Iowa's vig-

orous, and in this court's view, effective impeachment of Schewe with contrary deposition testimony—the jury could reasonably infer that Top of Iowa did not adequately advise Schewe of the "riskiness" of HTAs or the increasing riskiness of "rolling" HTAs in the fall of 1995, as compared to delivering grain on the contracts, and such information was material to Schewe's intelligent, knowing decisions concerning entry into and performance under his HTAs. *See id.* Again, this is so, notwithstanding that Top of Iowa vigorously impeached Mr. Schewe concerning his lack of interest in information about HTAs; failure to pay attention to information about HTAs provided, for example, at seminars in the early spring of 1995 and from other sources; his signing of a disclosure statement about HTAs; and his deposition testimony that he did in fact agree to and receive notice of the "rolls" and resulting "spreads" and per bushel charges on his HTAs in the fall of 1995, from which he should have been aware that inverse spreads and other "risks" were possible.

Although the court would have reached a contrary verdict on the evidence presented, were the court to grant judgment as a matter of law on Schewe's breach-of-fiduciary-duty counterclaim on this record, the court believes it would " 'invade the jury's rightful province.' " *Tatom,* 228 F.3d at 931 (quoting *Gardner,* 82 F.3d at 251). Top of Iowa's post-trial motion for judgment as a matter of law on Schewe's breach-of-fiduciary-duty counterclaim will therefore be denied as to Top of Iowa's contentions that there was insufficient evidence on elements one and two of this counterclaim to sustain the jury's verdict. *See Foster,* 250 F.3d at 1197; *Children's Broadcasting Corp.,* 245 F.3d at 1015; *Belk,* 228 F.3d at 878.

### 4. Damages

Even if there was sufficient evidence to find a fiduciary relationship existed be-

tween the parties and that Top of Iowa breached a fiduciary duty, Top of Iowa argues that Schewe should not have been allowed to present evidence of damages on such a claim at trial, because he did not identify any damages prior to trial, in either his deposition testimony or answers to pertinent interrogatories. Top of Iowa contends that it was unfairly surprised by Schewe's undisclosed contention that he had incurred storage costs for his grain as a result of Top of Iowa's failure to disclose information about the riskiness of his HTAs, which Schewe apparently contends he would not have incurred otherwise, because the undisclosed information would have prompted him to deliver grain pursuant to the HTAs in the fall of 1995, instead of storing some of it. Therefore, Top of Iowa asks that the court enter judgment as a matter of law on Schewe's counterclaim of breach of fiduciary duty.

It appears from the relief requested that Top of Iowa is not merely contending that there was insufficient evidence of damages in the absence of the evidence of storage costs, which should have been excluded, to sustain the jury's *award* on this counterclaim, but that Top of Iowa is contending that, in the absence of evidence of storage costs, there is insufficient evidence to sustain the *verdict* in favor of Schewe on his breach-of-fiduciary-duty counterclaim, because he failed to produce sufficient admissible evidence to establish the third and fourth elements of his claim. *See* Final Jury Instruction No. 6 (the third and fourth elements of the claim were that "the breach of fiduciary duty was a proximate cause of damage to Mr. Schewe" and "the amount of damages, if any," respectively). Thus, the court reads this argument to be another attack on the sufficiency of the evidence to sustain the jury's verdict on this counterclaim. Schewe did not respond to this argument.

However, for the reasons stated on the record, the court admitted the evidence that Schewe incurred storage costs as damages arising from Top of Iowa's breach of fiduciary duty, and the court does not now find that this evidence should have been excluded. The evidence of storage costs damages was sufficient for a reasonable jury to find that Schewe established the third and fourth elements of his breach-of-fiduciary-duty counterclaim. Therefore, that part of Top of Iowa's post-trial motion for judgment as a matter of law on Schewe's breach-of-fiduciary-duty counterclaim will also be denied as to Top of Iowa's contention that there was insufficient evidence of damages in the absence of improperly admitted evidence. *See Foster*, 250 F.3d at 1194; *Children's Broadcasting Corp.*, 245 F.3d at 1015; *Belk*, 228 F.3d at 878.

Because the court will deny Top of Iowa's post-trial motion attacking the jury's verdict in favor of Schewe on his breach-of-fiduciary-duty counterclaim, the court must necessarily consider Schewe's own post-trial motion, which addresses the effect of the verdict on the breach-of-fiduciary-duty counterclaim upon the verdict in favor of Top of Iowa on its breach-of-contract claim.

### B. Schewe's Post–Trial Motion

For his part, Schewe seeks post-trial relief from the judgment in favor of Top of Iowa on its breach-of-contract claim on three grounds. First, Schewe contends that Top of Iowa's failure to disclose all material facts in its dealings with him, as established by the jury's verdict in his favor on his breach-of-fiduciary-duty counterclaim, bars Top of Iowa from recovering under the contracts. Second, Schewe contends that there was no legally sufficient evidentiary basis to support Top of Iowa's breach-of-contract claim, again because the

finding that Top of Iowa breached its fiduciary duty to him establishes that the elements of Top of Iowa's breach-of-contract claim were not proved. Finally, Schewe contends that the jury's verdicts on Top of Iowa's breach-of-contract claim and his breach-of-fiduciary-duty counterclaim are irreconcilably inconsistent, which entitles him to a new trial. The court will consider these arguments in turn.

### 1. The legal bar to Top of Iowa's recovery

#### a. Preservation of the issue for post-trial consideration

This portion of Schewe's motion for judgment as a matter of law is not premised on sufficiency of the evidence, but on the contention that, as a matter of law, the verdict in his favor on his breach-of-fiduciary-duty counterclaim bars Top of Iowa's recovery on its breach-of-contract claim. A party may move for judgment as a matter of law, post-verdict, on a discrete or purely legal ground, as well as on the basis of insufficiency of the evidence. *See, e.g., K&T Enters., Inc. v. Zurich Ins. Co.,* 97 F.3d 171, 175 (6th Cir.1996) ("A motion for judgment as a matter of law, however, can also be made on purely legal grounds, as Rule 50(b) makes clear: 'Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.' The 1991 Advisory Committee's Notes to revisions in the Federal Rules of Civil Procedure indicate that one purpose of the terminology change was to make clear the linkage between Rule 50 and Rule 56 relating to summary judgment, both of which use the same phrase 'judgment as a matter of law.' Fed. R.Civ.P. 50 advisory committee's note (1991). Compare Fed.R.Civ.P. 50 with Fed.R.Civ.P. 56(c)."); *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.,* 51 F.3d 1229, 1236 (4th Cir.1995) ("a party may appropriately move for judgment as a matter of law on discrete legal issues"). However, Schewe did not assert this ground for judgment as a matter of law in either of his pre-verdict Rule 50 motions, but instead moved for judgment as a matter of law against Top of Iowa on its breach-of-contract claim only on the ground that the evidence was insufficient to support that claim.[2]

Some courts have held that a post-verdict motion for judgment as a matter of law based on a purely legal contention is also subject to the requirement that the ground must have been asserted in a pre-verdict motion. *See, e.g., Johnson v. Sawyer,* 120 F.3d 1307, 1331 (5th Cir.1997) (a pre-verdict motion for judgment as a mat-

---

**2.** To make this determination, the court reviewed the "real time" transcript of the trial. On April 3, 2001, Schewe's motion for judgment as a matter of law consisted of the following:

> MR. MALLOY: We would move for a motion for judgment as a matter of law that the plaintiffs have failed to prove their case and have failed to prove a prima facie case in which this matter should be submitted to the jury. They have failed to prove that there has been any breach of contract by the defendant Virgil E. Schewe. They have failed to prove that they have been dam-

aged in any respect by any relationship they've had with Virgil Schewe, and we would, therefore, move that the—for a judgment as a matter of law in favor of the defendant, Virgil Schewe.

Trial Transcript ("real time"), April 3, 2001. The court denied that motion for judgment as a matter of law. On April 4, 2001, Schewe made a cursory request to "renew [his] motion" prior to submission of the case to the jury, which the court clarified meant a request to renew his Rule 50 motion. *See id,* April 4, 2001.

ter of law pursuant to Rule 50 "should include *all* grounds, legal and factual, for judgment as a matter of law," and in the absence of assertion of a legal ground pre-verdict, courts may decline to review the issue post-verdict or on appeal) (emphasis in the original). Such a rule would appear to be in accord with Eighth Circuit precedent regarding renewal of Rule 50 motions generally. *See Belk,* 228 F.3d at 877 n. 3 (declining to reach a contention concerning sufficiency of the evidence that was not raised in the defendants' pre-verdict motion for judgment as a matter of law, citing FED.R.CIV.P. 50(b) *cmt.* (1991), which states, "A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion.").

However, other courts have held that, where the ground for judgment as a matter of law is purely legal, there may be an exception to the requirement that the ground must have been asserted by pre-verdict motion. For example, in *Shockley v. Arcan, Inc.,* 248 F.3d 1349 (Fed.Cir. 2001), the Federal Circuit Court of Appeals observed, "Under the Federal Rules of Civil Procedure, a party may make a Rule 50(b) renewed motion for [judgment as a matter of law (JMOL) ] after a jury verdict only if the party made a motion for JMOL at the close of evidence under Rule 50(a)," although "[t]he Fourth Circuit, in a rarely utilized exception, allows a party to make a Rule 50(b) motion despite failure to file a Rule 50(a) motion where: (1) the basis for the Rule 50(b) motion is a purely legal issue; and (2) the opposing party had notice of the defect and an opportunity to correct the error." *Shockley,* 248 F.3d at 1361 (citing *Singer v. Dungan,* 45 F.3d 823, 829 (4th Cir.1995), and *Federal Savings & Loan Ins. Co. v. Reeves,* 816 F.2d 130, 138 (4th Cir.1987)). Assuming such an exception might be recognized in this Circuit, the court does not believe that

Schewe has satisfied its requirements. In this case, although the first basis for relief in Schewe's post-trial motion may be "purely legal," there is no indication of when Top of Iowa would have had notice of the defect and an opportunity to correct the error. *See id.* Therefore, Schewe's post-trial motion on this ground does not fit within the narrow exception for consideration of a "purely legal" issue for the first time on a post-trial motion for judgment as a matter of law.

Although this portion of Schewe's motion could be denied on the basis of procedural default alone, in the alternative, the court finds that Schewe's contention is without merit, as explained more fully below.

### b. Effect of the finding of breach of fiduciary duty

The substance of Schewe's first contention is the following:

[T]he important factor that cannot be ignored is the legal effect of the jury's factual finding that Top of Iowa failed in its duty to disclose the material facts of the HTA contracts to Mr. Schewe. A party may obtain rescission of a contract where the other parties [sic] breach is so substantial as to defeat the object of the contracting parties. *Beckman v. Carson,* 372 N.W.2d 203, 208 (Iowa 1985); *Ryko Manufacturing Co. v. Eden Services,* 823 F.2d 1215, 1239 (8th Cir.1987). Also, if a party is wrongfully induced into entering into a contract, that contract can be set-aside by the party. *Hyler v. Garner,* 548 N.W.2d 864, 871 (Iowa 1996). In the instant case, that is exactly what Schewe requested in his prayer for relief: "2. That this Court enter judgment in Defendant's favor, setting aside and/or declaring invalid, the contracts attached to Plaintiff's complaint." The factual finding of the jury regarding

the Elevator's failure to disclose the material facts of the transaction dictates a legal determination that the judgment on the contracts be set-aside.
Memorandum In Support Of Virgil Schewe's Post Trial Motions, 4–5.

In response, Top of Iowa contends, first, that the *Ryko* and *Beckman* decisions on which Schewe relies are inapplicable, because the jury found that Top of Iowa did not materially breach the contracts, even if the jury found that Top of Iowa breached its fiduciary duty. Second, Top of Iowa argues that rescission is only appropriate when the other party is a non-breaching party, citing *Ryko*, 823 F.2d at 1239, but the jury found that Schewe breached the contracts. Finally, Top of Iowa contends that, in *Hyler*, the third decision on which Schewe relies, the court rescinded the contract after finding that the seller had committed fraudulent misrepresentation and the buyer had done nothing to breach the contract, but Schewe has not asserted a counterclaim of fraudulent misrepresentation, and the jury found that he breached the contracts.

■■■ The court agrees with Top of Iowa that the decisions on which Schewe relies are inapplicable. Schewe is attempting to turn his breach-of-fiduciary-duty counterclaim into a claim of breach of contract, on which he did not prevail, and/or a claim of fraudulent misrepresentation, which he did not submit to the jury, although he originally pleaded a counterclaim of fraudulent misrepresentation. This is not to say that the decisions he cites do not stand for the propositions asserted, only that the propositions are inapplicable in the circumstances of this case.

For example, in *Ryko Manufacturing Company v. Eden Services*, 823 F.2d 1215 (8th Cir.1987), *cert. denied*, 484 U.S. 1026, 108 S.Ct. 751, 98 L.Ed.2d 763 (1988), in a discussion of the defendant's counterclaim of breach of contract, the Eighth Circuit Court of Appeals noted that, "[u]nder Iowa law, a breach must be material before it becomes a valid basis for unilateral termination of the contract by the non-breaching party." *Ryko*, 823 F.2d at 1239 (citing, *inter alia*, *Beckman*, 372 N.W.2d at 208). In *Beckman*, the Iowa Supreme Court wrote, "A party may obtain rescission of a contract where the other party's breach is so substantial as to defeat the object of the contracting parties." *Beckman*, 372 N.W.2d at 208. The court has no quarrel with the propositions for which these cases stand, but they are inapplicable here, because the "breach" by Top of Iowa found by the jury was a breach of *fiduciary duty*, not a breach of the HTA contracts. Indeed, Schewe did not specify non-disclosure of material information as a breach of contract in support of his breach-of-contract counterclaim, *see* Final Jury Instruction No. 5 (the explanation to the "breach" element of the instruction on Schewe's breach-of-contract counterclaim stated, in pertinent part, "Mr. Schewe contends that Top of Iowa breached the HTAs in the following ways: (1) by refusing to accept delivery of his grain in the Fall of 1995 and/or in the Spring of 1996; (2) by trying to change the terms of the contracts; and (3) by forcing him to 'roll' his contracts to a later delivery date and then improperly demanding payment for Top of Iowa's expenses in handling the contracts."), and the jury found that Top of Iowa had not breached the HTAs in any of the ways specified by Schewe. Thus, even if the jury found a breach of Top of Iowa's fiduciary duty to disclose material information, the jury did not find that the breach was a breach of the HTA contracts. Moreover, as Top of Iowa points out, the jury found that Schewe *did* breach the HTA contracts, which would preclude him from unilateral termination of the con-

tract. *See Ryko,* 823 F.2d at 1239; *see also* Final Jury Instruction No. 4 (instructing that, on Top of Iowa's claim of breach of contract, "Top of Iowa contends that Mr. Schewe breached or repudiated the HTAs by failing to deliver grain under the terms of the contracts."). Assuming, as Schewe evidently does, that a breach of fiduciary duty constitutes a breach of contract, implicit in the jury's finding that Schewe breached the HTAs, while Top of Iowa had done what the contract requires or had been excused from doing what the contract requires, *see* Final Jury Instruction No. 4 (element three of Top of Iowa's breach-of-contract claim was that Top of Iowa has done what the contract requires and element four was that Schewe breached the contract), is a finding that any breach of fiduciary duty by Top of Iowa was *not* "so substantial as to defeat the object of the contracting parties," *Beckman,* 372 N.W.2d at 208 ("A party may obtain rescission of a contract where the other party's breach [of the contract] is so substantial as to defeat the object of the contracting parties."), or was excused.

Furthermore, the fiduciary duty in this case did not arise *from the contracts,* but from *the relationship of the parties. See* Final Jury Instruction No. 6 (stating circumstances giving rise to a fiduciary relationship). Thus, breach of the resulting fiduciary duty does not necessarily constitute a breach of the contracts at issue. To put it another way, it was the fiduciary relationship found by the jury, not the terms of the HTAs, that gave rise to Top of Iowa's fiduciary duty to advise Schewe of the "riskiness" of the HTAs, so that the jury found that Top of Iowa breached a duty "extrinsic" to the contract, not that Top of Iowa breached a duty under the terms of, or "intrinsic" to, the contract. *See Beckman,* 372 N.W.2d at 208 (the breach *of the contract* must be so substantial as to defeat the object of the contract-

ing parties); Final Jury Instruction No. 5 (element four defined the ways in which Schewe alleged that Top of Iowa had breached the contract).

Similarly, Schewe's reliance on *Hyler v. Garner,* 548 N.W.2d 864 (Iowa 1996), is misplaced. In *Hyler,* the Iowa Supreme Court stated, "When a party claims that he has been induced to enter into a contract based on the other contracting party's misrepresentation, he may seek to avoid the contract by suing for rescission using the misrepresentation as a basis for the requested relief." *Hyler,* 548 N.W.2d at 870. The Iowa Supreme Court also recognized that fraudulent misrepresentation can be asserted as a tort claim for damages, *id.* at 871, and set about distinguishing the tort and equitable claims. *Id.* at 871–72. The court noted that, while the tort claim requires proof of "(1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent; (6) justifiable reliance; and (7) resulting injury or damage," the equitable claim for rescission based on fraudulent misrepresentation did not require proof of "scienter or pecuniary damage." *Id.* at 871. In *Hyler,* the Iowa Supreme Court acknowledged this court's comment that the element of "intent" in the context of a rescission action had not been defined consistently in Iowa decisions. *Id.* (citing *Utica Mut. Ins. Co. v. Stockdale Agency,* 892 F.Supp. 1179, 1195 (N.D.Iowa 1995)). Therefore, the Iowa Supreme Court clarified that, in the context of an action for rescission based on fraudulent misrepresentation, the claimant must show "intent to induce the plaintiff to act or refrain from acting." *Id.* The Iowa Supreme Court then concluded that "the elements of an equitable claim for rescission based on misrepresentation are (1) a representation, (2) falsity, (3) materiality, (4) an intent to induce the other to act or refrain from

acting, and (5) justifiable reliance." *Id.* at 872.

Schewe's claim, however, is not an equitable claim for rescission based on misrepresentation, but a claim of breach of fiduciary duty based on failure to disclose material information. The elements of Schewe's claim were (1) Top of Iowa owed a fiduciary duty to Mr. Schewe; (2) Top of Iowa breached the fiduciary duty it owed to Mr. Schewe; (3) the breach of fiduciary duty was a proximate cause of damage to Mr. Schewe; and (4) the amount of damages, if any. *See* Final Jury Instruction No. 6. Thus, the elements of the claims are not identical. Even if the elements of an equitable claim for rescission were implicitly established by proof of a breach of fiduciary duty to disclose material information, breach of fiduciary duty must be proved only by the greater weight or preponderance of the evidence, while a claim of fraudulent misrepresentation, even an equitable claim for rescission, must be proved by "clear and convincing evidence." *See St. Paul Reinsur. Co., Ltd. v. Commercial Fin. Corp.,* 144 F.Supp.2d 1057, 1083 (N.D.Iowa 2001) (summarizing the elements for an equitable claim for rescission, based on fraudulent misrepresentation, as articulated in *Hyler,* and the applicable burden of proof). Consequently, the claims are not co-extensive and, therefore, proof of breach of fiduciary duty does not necessarily constitute proof of an equitable claim for rescission based on fraudulent non-disclosure.

Nor do the claims afford the prevailing party with the same relief. This court noted, in its statement of its rationale for the damage instruction on Schewe's claim of breach of fiduciary duty, that there appears to be an identity in the measure of *damages* for breach of fiduciary duty and fraudulent misrepresentation. *See* Order Regarding The Court's Proposed Damages Instruction, April 2, 2001 (attached explanatory letter citing *Midwest Management Corp. v. Stephens,* 353 N.W.2d 76, 81 (Iowa 1984), which states, "The measure of damages is the same whether the underlying theory of liability is fraud or breach of fiduciary duty."). However, that does not mean that a party who has proved breach of fiduciary duty is also entitled to the *equitable relief* of rescission, which flows from proof of an equitable claim of fraudulent misrepresentation or fraudulent non-disclosure. Indeed, Schewe has cited no case in which a court granted rescission of a contract based on breach of fiduciary duty in any circumstances, let alone in circumstances comparable to those presented here. The court has found no decisions affording such relief in comparable circumstances.

Therefore, the court rejects Schewe's contention that success on his counterclaim of breach of fiduciary duty bars Top of Iowa's claim of breach of contract.

### 2. Sufficiency of the evidence of Schewe's breach of contract

As suggested above, Schewe's second contention, that there is insufficient evidence to support the jury's verdict in favor of Top of Iowa on its breach-of-contract claim, is also primarily premised on his success on his breach-of-fiduciary-duty counterclaim. He contends that Top of Iowa's breach of fiduciary duty in failing to disclose material information necessarily means that there was no "meeting of the minds," as required by the first element of Top of Iowa's breach-of-contract claim, concerning existence of a contract. In support of this proposition, Schewe cites *Southern Surety Co. v. Fidelity & Casualty Co.,* 50 F.2d 16, 19 (8th Cir.1931). Next, Schewe contends that, in light of his success on his breach of fiduciary duty

counterclaim, there is no legally sufficient evidence that Top of Iowa had done what the contract required, as it was required to show under element three of its claim, because Top of Iowa did not make adequate disclosure of the risks inherent in the contracts. Finally, Schewe contends that Top of Iowa failed to meet the minimum evidentiary standard that it properly allowed him the opportunity to deliver his corn in the fall of 1995, as required by the contracts, presumably arguing that this conduct excused his own breach of the contracts.

Not surprisingly, Top of Iowa disagrees. Top of Iowa contends that there was sufficient evidence of a "meeting of the minds" on the material terms of *the contracts,* which concerned delivery of grain. Top of Iowa contends that any "risk" only arose when Schewe decided to "roll" his contracts to the spring of 1996 and instead sell some of his corn for cash in the fall of 1995. Top of Iowa contends that it then adequately advised Schewe of the effect of the rolls on the price he would receive under the HTAs, and even if he was not adequately advised, he did not complain about the prior "rolls," which created price changes in Schewe's favor, until further rolling would have resulted in negative effects; thus, Top of Iowa contends that Schewe affirmed the contracts. Top of Iowa elsewhere characterizes Schewe's conduct as "ratifying" the HTAs after obtaining information that he contends he was not given initially, citing *Southern Surety Co.,* 50 F.2d at 19, the decision on which Schewe in part relies. As to proof that Top of Iowa gave Schewe the opportunity to deliver his grain in the fall of 1995, Top of Iowa points out that every witness, including Schewe, testified that if Schewe had gotten in line, he could have delivered grain in the fall of 1995, but he chose not to do so, because he didn't want to incur the expense of waiting in line. Moreover,

Top of Iowa contends that the evidence shows that Schewe could have delivered all of his grain in the spring of 1996 pursuant to his "rolled" HTAs, if he had not already sold some of his grain for cash in the fall of 1995.

### a. "Meeting of the minds"

As to Schewe's first contention concerning sufficiency of the evidence, that there was no evidence of a "meeting of the minds," the court finds that Schewe has once again overplayed the authority on which he relies, the decision of the Eighth Circuit Court of Appeals in *Southern Surety Company,* 50 F.2d at 19. First, the decision in *Southern Surety Company* involved an affirmative defense of "fraudulent concealment of facts material to the risk," *see Southern Surety Co.,* 50 F.2d at 16, and no such counterclaim or affirmative defense was submitted to the jury in this case.

 Moreover, the decision is otherwise inapplicable. In *Southern Surety Company,* the Eighth Circuit Court of Appeals did indeed hold that, if the contract was consummated on June 23, 1924, "then the defendant acted without the disclosure of facts material to the risk, and might have rescinded," because there was no "meeting of the minds," as the district court had concluded. *See Southern Surety Co.,* 50 F.2d at 19. However, Schewe overlooks the fact that, in *Southern Surety Company,* the contract at issue was a contract for reinsurance of part of the risk incurred on a surety bond. *See id.* at 16 & 18. Thus, the "risk" involved in the contract was undeniably a material term of the contract. Here, however, the jury was instructed that, as to the existence of a contract,

The existence of a contract requires a meeting of the minds on the material

terms. This means the parties must agree upon the same things in the same sense.

Final Jury Instruction No. 4 (explanation to element one). The contracts at issue here concerned not who would bear the "risk" of a surety bond, but sale and purchase of grain. Schewe has not argued that the parties did not mean the same things in the same sense *as to any term of the HTAs*, such that there was no "meeting of the minds" concerning the material terms of the sale and purchase of his corn. *Id.* (a contract "requires a meeting of the minds *on the material terms* ") (emphasis added). The jury found that there was a "meeting of the minds" on the material terms *of the HTA contracts*, and the court cannot conclude that no reasonable juror could have reached such a conclusion. See *Foster*, 250 F.3d at 1192; *Children's Broadcasting Corp.*, 245 F.3d at 1015; *Belk*, 228 F.3d at 878.

### b. Top of Iowa's adequate performance

■ Similarly unavailing is Schewe's contention, as to the third element of Top of Iowa's claim of breach of contract, because the jury found that Top of Iowa breached its fiduciary duty to disclose material information. The third element of Top of Iowa's breach-of-contract claim required Top of Iowa to prove that "Top of Iowa has done what the contract requires or has been excused from doing what the contract requires." *See* Final Jury Instruction No. 4. As the court explained above, any fiduciary duty to disclose material information was "extrinsic" to the requirements of the contract, because it arose from the parties' fiduciary relationship, not from the contracts themselves. Thus, the disclosure was not something that "the contract requires." *Id.* Therefore, Top of Iowa's failure to satisfy its fiduciary duty does not establish that no reasonable juror could have found that Top

of Iowa had done what was required under the contracts. See *Foster*, 250 F.3d at 1192; *Children's Broadcasting Corp.*, 245 F.3d at 1015; *Belk*, 228 F.3d at 878.

### c. Failure to provide Schewe with an opportunity to deliver grain

■ The last of Schewe's arguments concerning sufficiency of the evidence is that there is insufficient evidence that Top of Iowa allowed Schewe the opportunity to deliver his corn in the fall of 1995, as required by the contracts. This contention also will not afford Schewe any relief. As Top of Iowa asserts, there is evidence in the record from several witnesses, including Schewe himself, that if Schewe had gotten in line, he could have delivered grain in the fall of 1995, but he chose not to do so, because he didn't want to incur the expense of waiting in line. Thus, in light of the evidence presented, if the court were to grant judgment as a matter of law in favor of Schewe on Top of Iowa's claim of breach of contract on this ground, the court believes it would " 'invade the jury's rightful province.' " *Tatom*, 228 F.3d at 931 (quoting *Gardner*, 82 F.3d at 251). Rather, sufficient evidence exists that a reasonable juror could find that this element had also been established, and Schewe's motion on this ground must consequently be denied. *See Foster*, 250 F.3d at 1192; *Children's Broadcasting Corp.*, 245 F.3d at 1015; *Belk*, 228 F.3d at 878.

### 3. Inconsistency of the verdicts

Finally, Schewe seeks a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure on the ground that the jury's verdicts on Top of Iowa's breach-of-contract claim and Schewe's breach-of-fiduciary-duty counterclaim are irreconcilably inconsistent. Specifically, Schewe contends that the jury made a factual finding that Top of Iowa failed to disclose all

material facts of the contract and that, "[a]s explained further in *Jarvis v. Commercial Union Assur. Companies*, it is fundamentally inconsistent for the jury to make conflicting decisions on the terms of the contract entered into and the parties [sic] understanding and knowledge of the material terms of the contract. 823 F.2d 392, 295[sic] (10th Cir.1987)." Memorandum In Support Of Virgil Schewe's Post Trial Motions at 6. Top of Iowa, however, contends that the verdicts were not irreconcilably inconsistent, for reasons previously argued in response to other portions of Schewe's post-trial motion, and because Schewe ratified and affirmed the contracts even after he learned of the supposed "riskiness" of the contracts, but later breached them by failing to deliver grain.

### a. Applicable standards

■■■■ Generally, a motion for new trial pursuant to Rule 59, or pursuant to Rule 50(b), as an alternative to judgment as a matter of law, "is only appropriate if the verdict was against the weight of the evidence so as to constitute a miscarriage of justice." *Foster*, 250 F.3d at 1197 (page citations unavailable); *see also Belk*, 228 F.3d at 878 (on deferential review of the district court's denial of a new trial motion pursuant to Rule 59(a), " 'The key question is whether a new trial should have been granted to avoid a miscarriage of justice.' ") (quoting *McKnight v. Johnson Controls*, 36 F.3d 1396, 1400 (8th Cir. 1994)). However, when the basis for a new trial motion is that the jury's verdicts are inconsistent, it is the court's "duty to harmonize inconsistent verdicts, viewing the case in any reasonable way that makes the verdicts consistent." *Anheuser–Busch, Inc. v. John Labatt, Ltd.*, 89 F.3d 1339,

1347 (8th Cir.1996), *cert. denied*, 519 U.S. 1109, 117 S.Ct. 944, 136 L.Ed.2d 833 (1997); *accord Bird v. John Chezik Homerun, Inc.*, 152 F.3d 1014, 1017 (8th Cir. 1998) ("When possible, this court must harmonize inconsistent verdicts, viewing the case in any reasonable way that makes the verdicts consistent.") (citing *Anheuser–Busch, Inc.*, 89 F.3d at 1347). The motion for a new trial should be granted if the court "can find no principled basis upon which to reconcile the jury's inconsistent findings." *Bird*, 152 F.3d at 1017.

■■■■ Just as there are procedural prerequisites to assertion of other issues on post-trial motions, the Eighth Circuit Court of Appeals has explained that, ordinarily, " 'If a party feels that a jury verdict is inconsistent, it must object to the asserted inconsistency and move for resubmission of the inconsistent verdict before the jury is discharged or the party's right to seek a new trial is waived.' " *Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir.1998) (quoting *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir.1992)). However, in this case, the parties were not present when the verdict was taken and the jury was discharged, so that it would be unreasonable, in this court's view, to preclude Schewe from asserting alleged inconsistency of the verdict on post-trial motions.[3]

### b. Application of the standards

Nevertheless, this portion of Schewe's post-trial motion is also unavailing. First, the decision of the Tenth Circuit Court of Appeals in *Jarvis v. Commercial Union Assurance Companies*, 823 F.2d 392 (10th Cir.1987), on which he relies for the propo-

---

**3.** The court notes that Schewe never suggested prior to or during trial, or during the submission and discussion of jury instructions on the various claims and counterclaims, that a verdict in his favor on the breach-of-fiduciary-duty counterclaim would be fatal to or inconsistent with a verdict in favor of Top of Iowa on its claim of breach of contract.

sition that it is fundamentally inconsistent for the jury to make conflicting decisions on the terms of the contract entered into and the parties' understanding and knowledge of the material terms of the contract does not actually stand for that specific proposition. Rather, in *Jarvis*, the court asserted only the more general proposition that "[i]t is fundamentally inconsistent for the jury to find that defendant breached the contract by failure to pay Witts' claim while also finding that the defendant was not liable for the breach." *Jarvis*, 823 F.2d at 395. Thus, Schewe has once again overstated the authority on which he relies.

■ Moreover, in light of the foregoing analysis of other contentions and the court's obligation to reconcile or harmonize the jury's verdicts, if there is a principled way to do so, *see Bird*, 152 F.3d at 1017; *Anheuser–Busch, Inc.*, 89 F.3d at 1347, no relief is required on this portion of Schewe's motion. As the court explained above, there is nothing fundamentally inconsistent about the jury's finding that Top of Iowa breached its fiduciary duty to disclose material information concerning the HTAs and the jury's finding that Top of Iowa did not breach its HTA contracts with Schewe, because the breach of fiduciary duty involved breach of a duty that was "extrinsic" to the terms of the contracts and instead arose from the fiduciary relationship of the parties. As the court concluded above, the jury could reasonably have found, on the evidence presented, that Top of Iowa did not breach the HTAs in any of the ways specified by Schewe in Final Jury Instruction No. 5, even if they found that Top of Iowa breached its fiduciary duty in the manner specified in Final Jury Instruction No. 6. Similarly, the jury could reasonably have found that Top of Iowa established that there was a "meeting of the minds" *concerning the terms of*

*contracts to sell and purchase grain* and that Top of Iowa had done all that it was required to do *under the HTA contracts*, as required for Top of Iowa to establish elements one and three of its claim of breach of contract, respectively, and at the same time have found that Top of Iowa breached an extrinsic duty to disclose information pertinent to the HTA contracts, as required for Schewe to prevail on his breach-of-fiduciary-duty counterclaim.

The verdicts are not inconsistent, *see Bird*, 152 F.3d at 1017; *Anheuser–Busch, Inc.*, 89 F.3d at 1347, and there is no other "miscarriage of justice" requiring a new trial in this case. *Foster*, 250 F.3d at 1197 (page citations unavailable); *see also Belk*, 228 F.3d at 878. Consequently, Schewe's alternative motion for a new trial will also be denied.

### III CONCLUSION

Upon a review of the evidence presented to the jury, the court concludes that the jury's verdict should stand. There is evidence from which a reasonable jury could conclude that Schewe established his counterclaim of breach of fiduciary duty. Similarly, there is sufficient evidence from which a reasonable jury could conclude that Top of Iowa established its claim of breach of contract. The court concludes further that the verdict in favor of Schewe on his breach-of-fiduciary-duty counterclaim neither bars Top of Iowa's breach-of-contract claim nor is irreconcilably inconsistent with the jury's verdict in favor of Top of Iowa on its claim.

Therefore,

1. Schewe's April 18, 2001, post-trial motion to set aside part of the judgment, for judgment as a matter of law, to amend the judgment, or, in the alternative, for a new trial, pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure, is **denied** on each of the grounds asserted.

2. Top of Iowa's April 19, 2001, renewed motion for judgment as a matter of law on Schewe's breach-of-fiduciary-duty counterclaim pursuant to Rule 50 of the Federal Rules of Civil Procedure is also **denied.**

3. The court sustains the jury's verdict and reaffirms the judgment entered pursuant to that verdict.

**IT IS SO ORDERED.**